# CRAWFORD, et als. v. THE PLANTERS' AND MERCHANTS' BANK OF MOBILE.

1. The act of the Legislature, incorporating the Planters' and Merchants' Bank, is a public statute, and will be noticed judicially by the courts, though not specially pleaded.

2. The act of 13th February, 1843, for the settlement of the affairs of the Planters' and Merchants' Bank continues the charter of the Bank in existence, for the purpose of maintaining suits whether commenced before or after the charter was *declared forfeited.*

3. To authorise the rendition of judgment by motion in favor of the Planters' and Merchants' Bank of Mobile, it is not sufficient to produce to the court the certificate of one assuming to be the President of the Bank, or a commissioner under the act of 1843, that the debt is the property of the bank, but the official character of the persons so assuming to act, must be proved, and the genuineness of their signature. It must appear from the record that such proof was made to the court, although an issue in fact be tried and found for the plaintiff.

4. It is not necessary to prove that the certificate was made at the time it bears date ; proof of the genuineness of the signature will be *prima facie* evidence of the contents of the certificate.

ERROR to the Circuit Court of of Mobile.

This suit was commenced by the defendant in error, by a motion against William Crawford, P. T. Harris, H. G. Davis and T. L. Starke, on a note payable to the bank, and was previously before this court at the instance of the present plaintiffs (except Starke, since dead) when the judgment was reversed and the cause remanded. [See the case, 4 Ala. Rep. 315.]

The record now presented to the court, discloses the original notice executed, and a judgment of the court in favor of the plaintiff against Crawford, Harris, Davis and Starke, rendered at the May term, 1841. This judgment, at the instance of the defendants, was set aside and the cause continued, and at the succeeding term, a judgment was again rendered in favor of the plaintiff against all the defendants. From this judgment, the defendants prosecuted a writ of error to this court, by which the judgment was reversed and the cause remanded.

At the spring term, 1843, the following proceedings were had; the plaintiff moved the court to amend a previous judgment of the court, which judgment is in these words:

"Planters' and Merchants' Bank of Mobile v. William Crawford and P. T. Harris. } Motion to set aside judgment rendered at this term in this motion granted, and cause continued," so as to read

Planters' and Merchants' Bank of Mobile v. William Crawford, P. T. Harris, *Henry G. Davis and Thomas L. Starke.* } Motion to set aside judgment rendered at this term; in this motion granted, and cause continued.

Which motion was granted by the court, and it being made to appear that T. L. Starke, one of the defendants, was dead, the cause as to him was discontinued. The remaining defendants then pleaded a special plea, the substance of which is, that the plaintiffs ought not further to maintain the action, because the Bank had forfeited its charter by failing to pay its bills and obligations on demand—that the legislature by an act passed 14th February, 1843, declared the charter of the Bank forfeited—that pursuant to the requisitions of the act, a proceeding in the nature of a *quo warranto*, was instituted against the Bank on behalf of the State, and that upon that proceeding, a judgment was rendered by the court, declaring the charter of the Bank forfeited, &c.

To this plea, the plaintiff demurred, and the court sustained the demurrer, and the cause being submitted to a jury, they found the issue for the plaintiff, and assessed his damages to three thousand three hundred and two dollars and sixteen cents, for which judgment was rendered.

From a bill of exceptions taken upon the trial, it appears that the plaintiff having produced a notice executed, also certificates purporting to be executed by F. C. Heard and Daniel M. Riggs, that the note was the property of the Bank, and the note and protest, moved the court for judgment.

The defendants objected that the notice and service was insufficient. 2. That there is no sufficient proof of the capacity of the officers who claim to be President or commissioners of the Bank. 3. That the notice and certificate do not authorise the court to entertain the motion. 4. That the notice, certificates and notes, and protest, did not authorise the motion. The court decided the papers sufficient, and would render judgment, if no plea was tendered, to which the defendant excepted.

The assignments of error are, 1st, that the court erred in amending the judgment *nunc pro tunc*.

2. In sustaining the demurrer to the plea.

3. It does not appear that the note was negotiable or payable to the plaintiff, or to any other Bank.

4. It does not appear that the certificate of the President or Commissioner was presented, and shewn to the court.

5. It does not appear that it was proved that F. C. Heard was President, or D. M. Riggs, Commissioner of the said Bank, or that their signatures were genuine.

6. In taking judgment against H. Davis, when the cause as to him had been continued.

The plaintiff submitted a written argument, in which he made the following points; 1. An amendment may be made at a subsequent term, *nunc pro tunc,* when there is any thing of record to amend by, but after a cause has been discontinued, the party is out of court, and no case, it is believed, can be found, in which it has been held, that such a judgment could reinstate the party, and besides, in this case, there was nothing on the record upon which the amendment could be made.

2. The question presented by the demurrer to the plea, was, whether the bank could proceed and obtain judgment, after its charter had been declared forfeited by the judgment of a competent tribunal. [8 Peters, 281.] If the legislature had given it the power to sue, after the forfeiture of the charter, such privilege should have been relied on in the replication, and not being done, cannot be considered by the court. But, this suit was commenced before the dissolution of the charter, and although the bank may be able to prosecute suits to close its business, there is no power given to *revive* one.

3. To sustain the 3d assignment, he referred to the case reported in 8 Porter, 104.

4. In support of the 4th assignment, he cited 4 Porter, 183; 8 Porter, 102.

5. It has been decided by this court in the case of Roberts, et al. v. The State Bank, that the court would judicially know who was the President of the State Bank, and take notice of his signature, but that was because he was appointed by the legislature, and because of the public interest in the Bank.

The Planters' and Merchants' Bank is a private corporation, it was, therefore, necessary to prove the capacity and signature of F. C. Heard, who claims to be President, and D. M. Riggs, who claims to be Commissioner, and that they were so at the time the certificates were made, as they are without date. [8 Porter, 102.]

6. Although the record states, that Davis appeared, this is a mere entry by the clerk, and is corrected and controlled by the previous proceedings, showing that there had been a discontinuance, and that he had been out of court for several terms.

GIBBONS, *contra.* The record as now presented, shows that there was no discontinuance of the cause as to Starke and Davis, and in point of fact, no amendment was necessary. But if it were, it is justified by the record, which shows what the judgment was which the court set aside.

Both, the act creating the Bank, and the act of 1843, declaring the charter forfeited, are public acts which the court will take judicial notice of, and therefore, need not be pleaded, and by the last act, power is given to it to collect its debts.

That the note was negotiable and payable at the Planters' and Merchants' Bank, is shown by the record.

It appears from the notice and the bill of exceptions, that the certificates of Heard, the former President, and of Riggs, one of the Commissioners, was before the court—and the cause being submitted to the jury upon an issue which is not disclosed by the record, this court cannot know that it was not proved when and by whom the certificates were made, but every presumption will be in favor of the verdict.

If it were true that the cause was discontinued as to Davis, he has waived it by his appearance and plea.

ORMOND, J.—When this cause was before this court at a previous term, [4 Ala. 313] the judgment was reversed and the cause remanded, because it appeared from the record as then presented, that a judgment which was afterwards set aside, was rendered against two of the defendants only, and without any continuance of the motion against the other two, a judgment was subsequently rendered against them also. The record now discloses, that the original judgment was against all four of the defendants, and there can be no doubt of the power of the court to amend the judgment entry, setting aside the first judgment, *nunc pro tunc,* so as to make it correspond with the facts as shown by the record, that the judgment was set aside as to all four of the defendants. Indeed, but for the imperfect condition of the record, from which this court was constrained to infer that the original judgment was against two of the defendants only, the cause would not have been reversed.

We do not consider it necessary to inquire, whether the act of the legislature, [Clay's Dig. 341, § 154,] declaring that "all private acts of assembly may be given in evidence without being spe-

cially pleaded," merely authorises the act to be given in evidence, or whether the proper construction is not that the court will judicially notice them as other acts of the legislature, because we are of opinion that the act chartering the Planters' and Merchants' Bank, is a public statute.

A statute which relates to all the subjects of the Realm, is a public statute. [Bac. Ab. 374.] The charter of this bank secures to the people of the State the right to engage as a partner in the concern, by putting in two-fifths of the capital stock, with a corresponding power in the direction of the bank; it is a matter therefore, which concerns the public generally, and not the private corporators alone, and is therefore clearly a public law. The constitution of the State evidently contemplates that all banks subsequently to be chartered, should, if not wholly, at least to a great extent, be public institutions, in which all the people of the State should have an interest, and over which the legislature should exercise some control. Such being their nature, the acts of the legislature, calling them into existence, concern also the people of the State, and are therefore public acts, which the courts will judicially notice. [See Bank of Utica v. Smedes, 3 Cow. 684.]

If, however, it were a private act, its recognition in the act of 13th February, 1843, which is undoubtedly a public law, authorizes the courts to take judicial notice of it, though not pleaded. [To this point, see Samuel v. Evans, 2 Term, 574.]

It is further insisted, that the act of 1843 continues the charter in existence only for the purpose of commencing new suits, and that all suits then in existence, must be at an end when the charter was declared forfeited. The act of the legislature, declaring the charter of the bank forfeited, and providing the means of judicially ascertaining the fact, declares " that for the purposes of settlement the powers now granted to the said bank for maintaining suits, and the corporate name of the bank shall be continued, and may be employed by the commissioners aforesaid, &c." A subsequent clause authorises suits against the bank. This act then continues the corporation in existence for one purpose, that of closing its affairs; to do which it has the power to maintain suits in its corporate name, and certainly the

reason which induced this enactment, applies with the same force to suits then in existence, as to those to be afterwards commenced. For the purpose of suing and being sued, the corporation has never ceased to exist ; as the same act which provides for the resumption by the State of the franchises conferred by the charter, continues it in existence for this purpose ; this objection therefore cannot prevail.

But the judgment must be reversed, because it does not appear that the court had jurisdiction. To give the court jurisdiction to render a judgment in this summary mode, it should appear that the certificate of the president of the bank, or by the act of 1843, that of one of the commissioners, was produced, certifying that the debt was the property of the bank. This is indispensable, even when an issue is made up, as was done in this case, and which as in other cases, would ascertain the liability of the defendant for the debt. [Curry v. The Bank of Mobile, 8 Porter, 372.]

In Roberts v. The State Bank, [9 Porter, 317,] we held that the court would judicially take notice who was president of the State Bank, and would judicially know his signature. This decision is placed upon the ground that the president of the State bank is a public officer, elected by the legislature, and the bank the property of the public. The president of this bank is appointed by the stockholders—the commissioners by the stockholders and the governor jointly. We think it cannot be affirmed that either the president of the bank or the commissioners, who are to close its affairs, are public officers—they are the mere agents of private individuals, in which the public has no direct or immediate interest—the State not having taken the stock, which by the charter it was authorized to take in the bank ; the reason, therefore, which influenced the decision in Roberts v. The State Bank, fails in this case.

It does not appear from the judgment entry, that any certificate of the ownership of the debt by the bank, was produced, but, from the bill of exceptions it appears, that the certificate of F. C. Heard, as president of the bank, and Daniel M. Riggs, as commissioner, were produced and shown to the court ; but

it is not shown in any part of the record, that any proof whatever was made either of the official character of the persons making these certificates, or that their signatures were genuine. This, in our opinion, was necessary, to give the court jurisdiction, and it has always been held, that the record must show that the proof was made which confers the jurisdiction. What would be sufficient evidence of the official character of one assuming to act as president of the bank, or commissioner, we need not now determine, but as the question has been argued, it is proper to say, that it would not be necessary to prove that the certificate was made at the time it bears date; proof of the genuineness of the signature would be *prima facie* evidence of the contents of the certificate.

The remaining assignments of error are covered by the previous decisions of this court, but as the question just examined, is decisive of the case, it is not necessary to consider them.

Let the judgment be reversed, and the cause remanded.