**FARMERS' MILL & ELEVATOR CO. v. HODGES et al. (No. 1926.)\***

(Court of Civil Appeals of Texas. Amarillo. Dec. 20, 1923. Rehearing Denied Jan. 17, 1923. On Second Motion for Rehearing, Feb. 7, 1923.)

**1. Abatement and revival ⟨≈⟩39 — Action against corporation not defeated by dissolution after filing of petition.**

Under Rev. St. art. 1206, as amended by Acts 1919, 36th Leg. 2d Called Sess., c. 56, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 1206), the dissolution of a corporation after filing of a petition against it cannot be grounds for a plea in abatement so as to defeat the action.

**2. Action ⟨≈⟩50(3)—Causes of action of three plaintiffs for breach of contract to purchase grain held properly joined.**

Where a cause of action for the breach of a contract to purchase grain, entered into by one plaintiff on behalf of himself and two others, exists in favor of all three, held that their causes were properly joined in one action, wherein they were joint plaintiffs, in view of the policy to avoid a multiplicity of actions, nor can defendant complain because the amount of judgment was apportioned between the three plaintiffs as their interest appeared.

**3. Pleading ⟨≈⟩291(1)—In absence of verified answer, contract sued on and oral testimony held admissible to show real parties to contract.**

In an action on a contract alleged to have been entered into by defendant's agent on his behalf, where the denial of the authority of the agent to make the contract was not verified as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1906, subd. 8, held that the instrument itself, though it did not purport to be executed in behalf of defendant, and testimony of the agent who made it and other oral testimony was admissible to show the real parties to the contract and the agent's authority.

**4. Appeal and error ⟨≈⟩1039(13)—Variance of two days between alleged date of contract and actual date held harmless.**

A variance of two days between the alleged date of a contract and the actual date is harmless error.

**5. Evidence ⟨≈⟩545—Evidence held insufficient to qualify witness to testify of the market value of grain.**

Evidence held insufficient to qualify a grain buyer to testify as to the market value of grain on a certain date.

⟨≈⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 25, 1923.

**6. Evidence ⚖=543(4)—Qualification of witness testifying to market value stated.**

The rule is that before a witness can so testify as to the market value of personal property he must have knowledge of the subject and the value, if there is one, at the place and time involved.

**7. Evidence ⚖=471(30)—Testimony that one executed contract for himself and others is testimony of fact, not opinion.**

Testimony by a witness that he executed a contract for himself and others is admissible testimony of fact, not the expression of an opinion.

**8. Evidence ⚖=317(6)—Testimony of conversation regarding value of grain held inadmissible hearsay.**

In an action for damages for the breach of a contract to purchase grain, testimony by plaintiffs as to what an agent of defendant told them regarding the market value of the grain at the time of the breach *held* inadmissible hearsay.

**9. Trial ⚖=83(2)—Objection that hearsay evidence was "incompetent" held sufficient.**

The objection that hearsay evidence was incompetent, irrelevant, and immaterial was sufficient, though it was both relevant and material, notwithstanding "incompetency" is a general objection which can appropriately be urged only to a witness because of insanity, infancy, senility, conviction of crime, etc., and is not generally applicable to oral testimony.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Incompetent—Incompetency.]

**10. Corporations ⚖=422(1)—Declaration of agent must·be made under expressed· author-·ity, or authority implied from the business to bind corporation.**

To make the declaration of a servant, agent, or officer of a corporation binding on it, the declaration must be made by virtue of express authority or be required by the due and ordinary prosecution of the business, and in an action for damages for the breach of a contract to purchase grain, ·declaration by defendant's agent at the time of rejecting the proffered delivery as to the market value on that date *held* not binding upon defendant, that being without the scope of his authority.

**11. Corporations ⚖=400—Evidence of limitation on general manager's authority to· buy grain held properly rejected· as not binding seller.**

In an action by the seller for damages for the breach of a contract to purchase grain, entered into by the general manager for defendant, a mill and elevator company, an offer by defendant to put in evidence a resolution of the directors limiting his authority *held* properly rejected, since the act relied on by plaintiff was within the apparent scope of his authority and a part of his duties, and the special limitation would not have bound plaintiff.

On Motion for Rehearing.

**12. Evidence ⚖=5(2) — Common knowledge that market prices of grain and other products are published daily.**

It is a matter of common knowledge that the prices of grain and other products are published daily.

Appeal from District Court, Carson County; W. R. Ewing, Judge.

Action by C. D. Hodges and others against the Farmers' Mill & Elevator Company. From a judgment for the plaintiffs, defendant appeals. Affirmed in part and reversed and remanded in part.

Underwood & Jackson and Adkins & Kimbrough, all of Amarillo, for appellant.

Veale & Lumpkin, of Amarillo, for appellees.

HALL, C. J. This is an action by C. D. Hodges, B. W. Hodges, and J. N. Hodges, against appellant company, in which the appellees alleged that, on or about the 15th day of September, 1920, they sold about 3,000 bushels of maize, which was not then threshed, to the appellant, through its manager, R. C. Lawver. That the plaintiffs, acting through C. D. Hodges, executed the following written evidence of the sale.

"White Deer, Texas, September 13, 1920.

"This confirms purchase of crop of maize, estimated to be around 3,000 bu., 400 bu. to be retained for feed from C. D. Hodges & B. W. Hodges & J. N. Hodges, at $1.50 per hundred, to be delivered as soon as can be threshed in good shape.     [Signed] R. C. Lawver.

"C. D. Hodges."

[1] It is further alleged that the grain was threshed about the 20th of November, 1920, and that plaintiffs offered to deliver to defendant 2,600 bushels, and· that defendant, through its said manager, stated that it did not desire to accept the grain, but would later notify · plaintiffs when to deliver it; that plaintiffs were not notified, and about the 14th day of January, 1921, they called upon the defendant, and were advised by Lawver that it would not take the grain and carry out its contract. They sue for the difference between the contract price and· the market value, which is alleged to be 60 cents per hundred. In addition ·to a general demurrer and· special exceptions the defendant filed a plea in abatement and of misjoinder, and further answered by general denial and a denial of the authority of Lawver to make the contract. The substance of the plea in abatement is that between the date of the filing of the original petition and the date upon which the defendant answered the company was duly and legally dissolved, and at the time of the ·trial was not a corporation

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and had no assets. They prayed that the suit be abated or prosecuted against the officers and members of the board of directors at the time of dissolution, naming such directors.

The court sustained plaintiff's general demurrer to the plea in abatement, and this action is made the basis of the first assignment of error and first proposition. In support of its contention the appellant cites the case of White et al. v. Texas Motor Car & Supply Co. (Tex. Civ. App.) 203 S. W. 441; Orange Lumber Co. v. Toole (Tex. Civ. App.) 181 S. W. 825, and in reply to the proposition the appellees cite Butcher v. J. I. Case Threshing Machine Co. (Tex. Civ. App.) 207 S. W. 980; Pease v. Rathbun-Jones Eng. Co., 243 U. S. 273, 37 Sup. Ct. 283, 61 L. Ed. 715, Ann. Cas. 1918C, 1147. Other authorities were cited which are prior in point of time to the cases mentioned. The decision of the proposition must rest upon the construction. V. S. C. S. 1922, art. 1206, which is an amendment of the original article in Revised Statutes 1911 and V. S. C. S. 1914. The article was amended in 1919 by Act 36th Leg. 2d C. S. c. 56, and with reference to the contention now under consideration the article as amended has not been construed so far as we are able to ascertain. The Butcher Case refers to the article as it appears in the Statutes of 1914. The other cases mentioned, as shown by the opinions in each, were based upon the statute as it existed in 1911, in which form it was brought forward in V. S. C. S. as article 1206 of the Statutes of 1914. The amendment of 1919 added the following language to the original article:

"Provided that the dissolution of a corporation shall not operate to abate nor be construed as abating any pending suit in which such corporation is a defendant, but such suit shall continue against such corporation and judgment shall be rendered as though the same was not dissolved, and in case no receiver has been appointed for said corporation, suit may be instituted on any claim against said corporation, as though the same had not been dissolved, and service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person, in charge of the affairs of the corporation at the time it was dissolved by whatever name they may be known in law, and judgment may be rendered as though the corporation had not been dissolved and the assets of said corporation shall be liable for the payment of such judgment just as if said corporation had not been dissolved."

Reference to the caption of the act shows that the purpose of the amendment was to provide against the very thing which the appellant sought to effect by its plea in abatement, and the language of the act is so clear that further comment is unnecessary. The facts being stated, the plea in abatement could be attacked by general demurrer,

and the court did not err in sustaining it. That the effect of the amendment to article 1206 is to prevent the abatement of the action by a subsequent dissolution of the corporation is in accord with many decisions in other jurisdictions where the language of the statute in such states is not as clear and positive as it is in the above-quoted amendment. Tuskaloosa Scientific & Art Association v. Green, 48 Ala. 346; Crawford v. Planters' & Merchants' Bank of Mobile, 6 Ala. 289; Board of Counselmen of Frankfort v. Deposit Bank of Frankfort, 124 Fed. 18, 59 C. C. A. 538; Schmitt & Bros. Co. v. Mahoney, 60 Neb. 20, 82 N. W. 99; Worcester Color Co. v. Henry Wood's Sons Co., 209 Mass. 105, 95 N. E. 392; Ramsey v. Peoria M. & F. Insurance Company, 55 Ill. 311. In the last-named case it is also held that suit should be prosecuted by the trustees of the defunct corporation in its name, even though the statute does not, as in this state, so provide.

[2] The second proposition is based upon the action of the court in overruling appellant's plea of misjoinder of parties and causes of action. The suit being one for damages for a breach of contract of sale, and it being shown that the damages resulted because of the failure of appellant to receive the grain and pay for it, we think the court correctly overruled the plea. The sale was made by C. D. Hodges for himself and the other two plaintiffs, and bound each of the plaintiffs to deliver, as soon as it could be threshed in good shape, the crop estimated at 3,000 bushels, less 400 bushels out of the crop to be retained by the sellers. The contract is entire, and the plaintiffs are jointly interested in the amount of the recovery. Their rights accrued at the same time and in virtue of the same contract, and, while if delivery had been accepted, each of the plaintiffs might have been entitled to recover in proportion to the amount of grain furnished by him in performance of the contract, they are, to say the least, proper parties to a suit for its breach. It is the policy of the Texas courts to avoid a multiplicity of suits and to favor a joinder of parties and causes of action when injury will not likely result. No injury is shown by appellant as the result, but, as said by this court in Western Union Telegraph Co. v. Morrow (Tex. Civ. App.) 208 S. W. 689, we may presume that it has been saved the costs of two suits by the joint action. Plaintiffs' rights accrued under the same contract. The same evidence was required to sustain or defeat the action, and the fact that they have recovered different amounts is an immaterial consideration. It was not pleaded that the actions were joined in a fraudulent attempt to confer jurisdiction upon the court. The fact that the judgment apportions to each plaintiff the amount due him is not a matter of which appellant has the right to complain. The authorities sus-

tain the ruling of the trial court. J. E. Dunn & Co. v. Smith (Tex. Civ. App.) 74 S. W. 576; Flanders v. Wood, 83 Tex. 277, 18 S. W. 572; Western Union Telegraph Co. v. Morrow (Tex. Civ. App.) 208 S. W. 689; Texas, etc., Railway Co. v. Andrews (Tex. Civ. App.) 80 S. W. 390, Civ. App. Court Rule 62a (149 S. W. x).

[3] Under the third proposition it is insisted that the court erred in permitting Lawyer to testify that he executed the contract for the elevator company, that he was in the company's office when it was executed, and that he acted in behalf of the company as manager in its execution. The appellees alleged that Lawyer was the company's manager, in active charge of its business when the contract was made; that he was its agent, and as such executed the contract. The action was based in part upon the writing referred to. V. S. C. S. art. 1906, subd. 8, provides that when a pleading is founded in part or in whole upon any instrument in writing, charged to have been executed by the opposite party, or by his authority, a denial of the facts charged must be verified by the parties sought to be charged. Appellant's pleading, denying the authority of Lawyer to execute the writing set out above, was not verified. Under the pleadings of the plaintiff the instrument itself, with the testimony of Lawyer objected to, was admissible. City Waterworks v. White, 61 Tex. 536; G., C. & S. F. Ry. Co. v. Edloff, 89 Tex, 454, 34 S. W. 414, 35 S. W. 144; Pullman Palace-Car Co. v. Booth (Tex. Civ. App.) 28 S. W. 719. Under the pleadings parol evidence was admissible to show the real parties to the contract and the authority of Lawyer to execute it for the appellant. Butler v. Merchant (Tex. Civ. App.) 27 S. W. 193.

[4] Under the fourth proposition it is insisted that the writing signed by Lawyer and Hodges, supra, was not admissible because the contract does not purport to be executed on behalf of the appellant. This part of the objection is disposed of by what has been previously said. The further objection was made that plaintiff alleged the date of the writing to be the 15th of September, and that the true date thereof was September 13th. This is not such a variance as would surprise appellant, and the error is harmless. We do not construe the writing exactly as counsel for both parties evidently construe it, and as it is treated in their briefs. The language of the instrument is, "this confirms purchase of crop of maize," etc., indicating that the sale was previously made, and that the writing itself was a confirmation of such sale, setting out the terms and stipulations thereof. The effect of the recital is that the appellant has already purchased the crop, amounting to about 2,600 bushels at $1.50 per hundred, and which plaintiffs had agreed to deliver as soon as it could be threshed. In any event, if executed by the authority of appellant and B. W. and J. M. Hodges, it is competent evidence of the fact of the sale, and under the pleadings is admissible as such.

[5, 6] By its fifth proposition the appellant complains of the admission of the evidence as to market value from the witness Lawyer. The objections urged are: (1) Because such evidence is not the proper way to prove market value; (2) because his evidence shows that he was not qualified to testify as to market value of maize on January 14 or 15, 1921; and (3) especially to that portion of his testimony as to what he told the plaintiffs as to the market price because by impeaching the witness by the plaintiffs or proving by the plaintiffs that he told them what the market price was is not proof of market value. It was shown that Lawyer was the manager of the appellant at this time, buying grain for his employer, and, if he had been qualified to testify as to market value there upon that date, appellees adopted the proper method of proving it. We think the second objection should have been sustained. That part of his testimony upon this point is:

"I was buying and selling grain at White Deer, but there were certain grains not being marketed at that time and I was not in touch with the market at that time. There was very little maize being marketed at that time. I don't suppose there was a carload of maize shipped out of White Deer in January, and I could not say whether there was any bought there in January or not. I don't know that I was acquainted with the market value of maize there on January 14, 1921, because there was not any being marketed to speak of at that time, and I don't remember just what the price was then—we never handled any maize and there was not but very little being offered at that time. I never handled any maize along in January at all, nor did I handle any in December. I don't exactly know right now the market value of maize in January at White Deer. I think I did know the market value at that time, but I have forgotten at this present time, and don't remember it to be a fact that the market value of maize from September, 1920, to January, 1921, declined a great deal."

The general rule is, before a witness can testify as to market value of personal property, he must have knowledge of the subject and of the market value, if there is one, at the time and place in question. 2 Jones on Evidence, p. 960; T. & P. Ry. Co. v. Sherrod, 99 Tex. 382, 89 S. W. 956. The answer of the witness in so far as it attempts to state the market value is as follows:

"From September 13, 1920, to the middle of January, 1921, it declined very little, possibly 30 or 40 cents a hundred at least. No; I don't mean it declined 30 or 40 cents a bushel, but possibly as much as 50 cents a hundred."

It is clear that this statement is simply a guess, and having previously stated that the market value declined a great deal during

that period, his further statement that it declined very little shows that he did not really know the market value at that time in White Deer. As to the third objection he stated:

"I don't remember whether or not I told these gentlemen here that the market value of maize at that time, about the 14th or 15th of January, 1921, in the town of White Deer, was 60 cents per hundred, and if I did tell them that the market price of maize at that time in the town of White Deer, was 60 cents per hundred, I could not say whether that was a fact or not, because I don't remember what the market value was at that time. I have no record here that I could look at and tell what the market value of maize was at that time."

This testimony is merely negative, and tends to sustain the appellant's contention that he was not qualified to testify upon the issue of market value.

[7] The sixth proposition is without merit. Under the pleadings, C. D. Hodges was properly permitted to testify that he executed the writing in behalf of his father, brother, and himself. It was not the expression of an opinion, but the statement of a fact, which is proven by other evidence in the record.

[8, 9] Under the seventh, eighth, and ninth propositions it is insisted that the court erred in permitting the plaintiffs to testify, over objections, to a conversation between Lawver and plaintiffs about the 14th of January, 1921. The evidence objected to is that, while they were at plaintiff's office on that date one of them asked Lawver what the market value of maize was at that time, and Lawver said it was 60 cents per hundred.

The objection to this testimony is that it is "incompetent, irrelevant, and immaterial, and was not the proper way to prove market value, and was an attempt to prove market value, based upon the hearsay statement of one witness, whose evidence shows that he was not qualified to give an opinion upon the market value of maize at that date." Such a statement by Lawver, if admissible otherwise, would be relevant and material, but a repetition of the statement by plaintiffs in their testimony is not competent. "Incompetency" is a general objection which can appropriately be urged only to a witness because of insanity, infancy, senility, conviction of crime, insensibility to the obligation of an oath, and relation to a decedent, or other status rendering him incompetent, and also to certain written evidence declared incompetent by statute, and, as a general rule, does not apply to oral testimony. Atkins v. Elwell, 45 N. Y. 753; Shandrew v. Chicago, etc., Ry., 142 Fed. 320, 73 C. C. A. 430. However, our Supreme Court in Texas & Pacific Railway Co. v. Gay, 88 Tex. 111, 30 S. W. 543, held that the objection that certain evidence "was not competent" was sufficiently specific to require the exclusion of the testimony. See Texas Brewing Co. v.

Dickey (Tex. Civ. App.) 43 S. W. 577. We think the objections should have been sustained to the testimony of each of the plaintiffs because it was incompetent as hearsay. Lawver's statement to them at that time was not under oath, and, like all testimony with reference to values, was largely the expression of an opinion. Ft. Worth & R. G. R. Co. v. Chisholm (Tex. Civ. App.) 146 S. W. 988, 22 C. J. 214.

[10] Furthermore, it does not appear that Lawver at that time actually knew the market value of maize at White Deer. On January 14, 1921, he was the general manager of the appellants' elevator at White Deer, and it is not shown that he was authorized to give information, either generally or specially, to third parties upon the question of market value of grain. Admitting that he made the statement to plaintiffs that 60 cents per hundred was the market value on that day, under the record it does not bind the appellants. To make the declarations of a servant, agent, or officer of a corporation binding upon such corporation, the declarations must be made by virtue of express authority, or be required by the due and ordinary prosecution of the business. The mere circumstances of such declarations having been made of and concerning matters not directly connected with the business, or even concerning the business itself in which he was employed, does not make them admissible and binding upon his employer or principal. They cannot have that effect, unless he has been instructed to make them, or unless they were so connected with the service that they became necessary in the due and effective discharge of it. Mechem on Agency. § 1783, states the rule, thus:

"In order, therefore, to bind the principal by statements or admissions under the rule, it is essential: (1) That the making of statements or admissions of the class of those in question, can fairly be regarded as incident to the act authorized to be done. If there was no occasion to say anything or anything of the sort in question there can be no foundation for their admissibility. (2) They must be made by an agent authorized to act wth reference to the subject-matter. The term 'authority' as here used has the same significance which it has in reference to the agent's act or contract; if, therefore, the statements, representations, or admissions offered in evidence were made by one who either had no authority at all or had no authority to represent the principal at the time or the place or respecting the matters concerning which they were made, they are not admissible against the principal. (3) The statements, representations, or admissions must have some inherent and rational relation to the said matter of his agency. If admissible at all, it is because they are incident to or a part of the act which he was authorized to do."

The rule is stated thus in 22 C. J. 387:

"A private corporation will be affected by the relevant declarations of its proper officers

of general or limited authority if made in the line of the declarant's official duty, but not by admissions made when the declarant was not engaged in the discharge of his duties, or which are beyond the scope of his authority."

The duty resting upon Lawver at the time of the alleged statement was to accept or reject the tender of the grain, and in order to perform this duty is was unnecessary for him to make any statement to plaintiffs as to its market value. It is not shown that it was either his duty or within the scope of his authority to give any of appellant's customers any information with reference to the market value of the produce which he was employed to purchase. This rule has been frequently followed in this state. Cannel & Co. v. Luna (Tex. Civ. App.) 144 S. W. 721, 722 (5); East Line, etc., Ry. v. Garrett, 52 Tex. 133; 3 Fletcher, Cyc. Corp. pars. 2160–2161.

[11] The appellant offered in evidence a resolution of the board of directors entered upon the minute book, the effect of which was an instruction to the manager not to advance any money on grain or make future contracts without first consulting the directors. The court did not err in excluding this testimony. Lawver was not a special agent, and the appellees were not required to inquire as to the extent of his powers before selling him their grain. He was the general manager of appellant's business there, and it was not only within the scope of his authority to buy grain, but the record shows that that was a part of his duties. This being true, the appellees were not bound by the special limitation placed upon his authority by the resolution offered in evidence, and of which appellees had no notice, Canadian Long Distance Telephone Co. v. Seiber (Tex. Civ. App.) 159 S. W. 897, and authorities there cited.

The court did not err in refusing to direct a verdict for the appellant. What has been said disposes of all the contentions urged in the brief, and which have been separately discussed.

Because of the errors pointed out, the judgment is reversed, and the cause remanded.

On Motion for Rehearing.

HALL, C. J. We have again reviewed the record, and are convinced that the original disposition of this appeal is proper. It appears from the statement of facts that Lawver testified:

"It is a fact that I remember it to be a fact, that the market value of maize from September, 1920, to January, 1921, declined a great deal."

In the very next sentence, when being examined by the very same attorney, he testified as follows:

"From September 13, 1920, to the middle of January, 1921, it declined very little, possibly 30 or 40 cents a hundred at least."

These two contradictory statements, made almost with the same breath, when taken with his other testimony, quoted more at length in the original opinion, show that he was not qualified to testify as to the market value, and that he was correct when he stated that he was not acquainted with the market value of maize at White Deer on January 14, 1921. A fact as material to the rendition of a proper judgment in the case as the market value of the maize is shown to be should be established by the testimony of a witness who knows such market value, and a judgment which rests upon the testimony of such a witness as Lawver, who after stating unqualifiedly that he did not know the market value, upon being pressed, makes what is clearly a guess as to what such value is, is insufficient to support a judgment. It does not appear that Lawver was hostile to the appellees or an unwilling witness in their behalf. On the contrary, he was the first witness introduced by appellees, and was at the time of the trial engaged in the business of buying grain in competition with the appellant, and had not been in the employ of appellant for several months.

A review of the authorities confirms us in the opinion that the court erred in permitting the appellees to establish market value by proof of Lawver's statement made on the 15th day of January that the market value of maize was 60 cents per bushel. Appellees insist that this statement is an admission, binding upon appellant company. We cannot assent to this contention. Before this statement can be held to bind the company it must be shown to have been made in connection with the performance of some duty which Lawver owed to his principal or the statement must have been expressly authorized by his principal. It must have been made as a necessary part of his conduct as agent, and, moreover, it must appear that it was within the scope of his authority as agent to make it. As expressed by the author cited in the original opinion:

"The declaration must be related to and connected with the business of the principal then pending."

If there was no reason for making the declaration and no occasion demanding that Lawver should tell the appellees what his opinion was as to the market value of grain on that day, then it was not made in the performance of his duties. The statement is unofficial, and is simply an expression by Lawver as an individual, and is inadmissible to bind the corporation. Moreover, it is uniformly held that a statement of an officer or agent of a corporation, in order to bind the company, must be a necessary part of

the transaction which the agent is authorized to perform, and must be the statement of a fact as distinguished from a mere expression of opinion. It was not shown, nor should it be inferred, that the appellant had authorized Lawver to inform the public generally or any of its customers or patrons, as to the condition of the market or the market price of grain at any particular time. Since the appellant was in the business of buying grain from the public, the reasonable inference, if any, should be that it had instructed Lawver not to give out any such information. Consideration for its own interest usually prompts a purchaser to withhold such information from those with whom it is dealing at arm's length.

[12] It is a matter of common knowledge that the market prices of grain and other products are published daily, and it is not clear why the company should be held to be a bureau of general information upon that subject, nor why it should be bound by the expression of its agent's opinion relative to a fact appearing more definitely in the columns of the daily papers. There is no direct proof that Lawver was authorized to give the appellees any information as to the market value of maize. No duty rested upon him to do so, and he must be held to have acted as an individual, and the appellant is not bound unless his statement was related to and necessarily connected with his act in declining to consummate the purchase of the maize. The appellees testified that they went to his office to ascertain whether he was going to receive the grain, and while there they asked him what the market price of maize was on that day. In the performance of his duty to his principal, he simply had to tell the appellees that his company would not accept the maize. Clearly in order to do this it was neither necessary nor proper for him, as representative of his company, to give appellees, at their request, his opinion as to the market value of the grain which he had refused to accept. On the contrary, there was every reason why he should not give such information to his principal's adversaries.

Appellees quote section 113 (13th Ed.) Greenleaf on Evidence, as follows:

"The admission or declaration of his agent binds him only when made during the continuance of the agency in regard to the transaction then depending," etc.

We think this is correct statement of the rule which should govern in this case, and the author further restates it in section 114, Id., as follows:

"It is to be observed that the rule admitting the declarations of the agent is founded upon the legal identity of the agent and the principal, and therefore they bind only so far as there is authority to make them. Where this authority is derived by implication from authority to do a certain act, the declarations of the agent to be admissible must be part of the res gestæ, and authority to make an admission is not necessarily to be implied from an authority previously given in respect to the thing to which the admission relates."

The appellee does not contend that Lawver's statement as to market price is in any sense a part of the res gestæ, nor can such contention be made because the thing being done at that time amounted to a breach of the contract. We will not undertake to review all the authorities cited in the motion; to do so would unnecessarily lengthen this opinion. Suffice it to say that none of the Texas cases cited are in conflict with the conclusions we have heretofore announced. Appellee quotes from the case of Gerlach Mercantile Co. v. Hughes (Tex. Civ. App.) 189 S. W. 784. Geo. Gerlach bought goods for his company, and in doing so made certain statements, and it was correctly held "that what he said in relation thereto" was admissible. In the instant case the expression of Lawver of his opinion as to the market value bears no relation whatever to his refusal to accept the maize. Again the agent's statements, in the case of Standefer v. Aultman & Taylor Co., 34 Tex. Civ. App. 160, 78 S. W. 552, as to the condition of the machine, was clearly admissible, because they concerned the very matter he had been specially sent to remedy, and this is also true of the agent's declarations in the cases of Cooper Grocery Co. v. Britton (Tex. Civ. App.) 74 S. W. 91, and G., C. & S. F. Ry. Co. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 768. Appellees cite the case of Missouri Pacific Railway Co. v. Gernan, 84 Tex. 141, 19 S. W. 461. That case, when considered with a companion case (Missouri Pacific Railway Co. v. Sherwood), found in 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643, illustrates the correctness of our holding with reference to Lawver's admissions. In the Gernan Case the consignee sought to bind the railway company by a statement in a letter to the consignor, written by the general agent of the carrier, in which it is recited that the cotton was burned at Greenville after its delivery to the carrier. The court held that the letter was admissible because the general agent was invested with authority to adjust the claim, and that his statement as to the loss of the cotton was within the scope of his agency. In the Sherwood Case an effort was made to show the loss of the cotton by a statement made by one C. H. Dent to Martin-Wise & Fitzhugh, which statement was attached to the deposition of plaintiff's witness, O'Neal. The statement was shown to have been in the handwriting of Dent, who was the freight claim agent of the appellant railway company. It was held by the Supreme Court to be inadmissible, Tarlton, Justice, saying:

"In making the statement here in question, it does not appear whether or not Dent was act-

ing within the scope of his agency, we are nowhere apprised of the extent of his authority except by the use of the term 'freight claim agent,' and about the duties and powers of such an agent the record is silent. Until it had been made to appear that such a statement was made in the discharge of the agent's duties, or within the scope of his powers and while the obligation of the carrier with reference to the cotton yet continued, the statement should have been excluded."

The appellee does not contend that it was any part of Lawyer's duty to give general information to the public relative to the market value of the grain. There is not a scintilla of evidence that he was authorized by the appellant to give such information, and it is certainly clear that it was neither necessary, relevant,' nor proper for him to make such a statement in declining to consummate the contract.

Believing that the matters presented in the motion were properly disposed of by the original opinion, it is overruled.

KLETT, J., not sitting.

### On Second Motion for Rehearing.

HALL, C. J.  Upon a review of the record our former judgment, reversing and remanding the entire case, is hereby modified, in that the judgment is affirmed as to all of the issues save and except the issue as to the market value of the maize on January 14 and 15, 1921.  We have heretofore held that the evidence is not sufficient to establish market value at White Deer, on the above date, and reversed the judgment upon that ground. As to the other issues, the case seems to have been thoroughly developed, and the judgment as to them is supported by ample evidence.  Rule 62a for the Courts of Civil Appeals provides that, if it appear to this court that the error affects a part only of the matter in controversy, and the issues are severable, the judgment shall only be reversed and a new trial ordered as to that part affected by such error.  It is therefore ordered that the judgment be reversed and the cause remanded for the purpose of ascertaining the market value upon said date and assessing the damages, if any, accordingly.

Affirmed in part, and reversed and remanded in part.

KLETT, J., not sitting.