**CAPITOL HOTEL CO., Inc., et al. v. RITTENBERRY.**

No. 3501.

Court of Civil Appeals of Texas. Amarillo.

March 4, 1931.

Rehearing Denied Sept. 9, 1931.

698

Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellants.

Stone & Guleke, of Amarillo, for appellee.

HALL, C. J.

This is an action by Rittenberry, an architect, against Ed R. Mayer, the Capitol Hotel Company, Inc., as the owners of the Capitol Hotel, and against the Illinois Standard Mortgage Company, Chicago Trust Company, and the National Bank of Commerce of Amarillo, as owners of liens against said hotel.

Plaintiff Rittenberry seeks to recover of Mayer and the hotel company a balance alleged to be due him as architect's fee, and prays for a foreclosure of his mechanic's lien on the property as against all of the defendants. The case was submitted to a jury under a general charge and resulted in a verdict and judgment in favor of Rittenberry against the hotel company for a balance due plaintiff of $16,215.46. The defendants, by cross-action, sought to recover of Rittenberry damages resulting from his want of skill, carelessness, and negligence in the performance of his duties as architect. The jury found in favor of Rittenberry and against the defendants on their cross-action.

The substance of plaintiff's petition is that on April 8, 1926, he and the defendant Mayer entered into a written contract, by the terms of which plaintiff undertook to furnish sketches, working drawings, specifications and detailed drawings, to generally superintend the work, and to audit all accounts in and about the construction of the hotel building. That the contract fixed plaintiff's fee at a sum equal to 5 per cent. of the cost of the hotel building, payable $1,800 when the contract was let and the remainder payable in installments as the building progressed; subject to the proviso that if the defendant did not proceed with the building, then the cash payment of $1,800 constituted full and final payment. It is alleged that the defendants decided to erect and did erect said hotel building; that Mayer formed a corporation known as the Capitol Hotel Company, Inc., to accomplish the erection of the hotel building and conveyed to said corporation the lots upon which the building was erected. That thereafter said corporation made a contract with the Brennan Company, a partnership, for the erection of said building on a cost-plus basis. That plaintiff forthwith, following his employment on April 8, 1926, began the preparation of plans and specifications for said building, and after the creation of the hotel company, which assumed plaintiff's contract, at its special instance and request, continued work upon such plans and specifica-

tions and continued to superintend the construction of said building until its completion, and that by reason of the premises, the defendants Mayer and the hotel company became obligated and bound to pay plaintiff 5 per cent. of the cost of such building, less admitted credits, leaving a balance due of $17,187.75, and as security therefor the plaintiff asserted a constitutional mechanic's lien on the lots described in the petition and claimed priority against the other defendants who were interested in a trust indenture lien against said property securing a bond issue.

The pleadings of the defendants are voluminous and will be stated when necessary in the consideration of the various propositions related thereto.

Under the first proposition, it is contended that the court erred in sustaining a general demurrer to the first count of the cross-action. The substance of this count is correctly set out in appellants' brief, from which we quote as follows:

(a) That when the defendant Mayer first came in contact with plaintiff in connection with the proposal to build the hotel in question, plaintiff held himself out as a skilled, proficient, and experienced architect, possessed of the usual skill and knowledge of one well trained in the art of architecture.

(b) That skilled architects generally possess, as a part of their art and professional service, the ability to estimate in advance, with reasonable accuracy, the cost of buildings planned and designed by them.

(c) That the plaintiff professed to have such ability and at the time of the beginning of his relation with defendants, and frequently thereafter, claimed and represented to defendants that he was well able to estimate with accuracy the cost of such hotel as he might plan and design for defendants.

(d) That defendants informed plaintiff, who well knew and understood all along, that the defendants considered it a matter of primary importance, upon which their whole course would depend, to know in advance, with reasonable certainty, what the cost would be if they undertook to construct the hotel, and plaintiff well knew that his claim of professional skill and ability to estimate such cost was the moving consideration with the defendants leading to the employment of plaintiff to act and serve as architect and superintendent in the premises, and plaintiff well knew that the defendants would not proceed with said hotel venture except in reliance upon an estimate of the cost thereof.

(e) That the only contracts ever made and executed between plaintiff and either of the defendants covering his services as architect in and about said hotel project was the contract of April 8, 1926, and the later and final contract of September 30, 1926, wherein reference is made to the first contract, and where-

in the plaintiff acknowledged receipt of the payment of $1,800, and which recites that both parties desired to amend or alter the first contract of April 8th, in so far as it pertains to the fee to be paid to plaintiff, and then sets forth their agreement "that in the event a five-story building is erected under plans and specifications furnished by first party, then and in such event the maximum fee shall not exceed the total sum of $12,250.-00 for architectural fee under said contract dated April 8, 1926, hereinabove referred to."

(f) That at the time said last-named contract was made, the defendants were yet undecided whether to proceed with the hotel venture, and as plaintiff well knew, the decision hinged mainly upon the question of the cost and the sufficiency of available financial resources to meet such cost.

(g) That after the plans for said hotel were revised so as to call for a six-story building to meet the requirements of the mortgage company which was to underwrite the proposed bond issue, the defendants were again concerned with respect to what the proposed building would cost, and in response to inquiries, the plaintiff claimed and represented to defendants that the building would not cost more than the amounts defendants had appropriated and arranged to borrow for that purpose, namely, $340,000.

(h) That said hotel was designed to have from 150 to 160 guest rooms.

(i) That the defendants had made a survey of the hotel business generally and with particular reference to Amarillo, and taking into consideration the various economic and competitive factors and the usual and ordinary cost of modern hotels, had concluded that a reasonable return on the investment could not be earned by the proposed hotel if it exceeded $2,000 per guest room, in addition to the fair proportionate cost of the ground floor rental space.

(j) That plaintiff agreed that such opinion was correct and expressed himself to defendants that he well realized that the cost would have to be held to said basis to leave any chance for a reasonable return and income on the investment.

(k) That plaintiff well knew and understood that the defendant hotel company would have been unwilling to proceed and involve itself in the heavy expenditure of such an enterprise if it had any idea that the building would cost more than the cost ratio above stated.

(l) That the matter of such cost was of such primary importance to defendants that they insisted with plaintiff that there must be no mistake on the point, and asked plaintiff to check his cost estimates again and calculate the cost in detail and let defendants have his written statement thereof.

(m) That thereupon, plaintiff acted upon such request, well knowing that defendants would depend upon him implicitly in that regard and regulate their conduct according to his advice, and thereafter, about April 11 1927, he delivered to the defendants his written, signed, detailed statement estimating the cost at $374,729.00 for the labor and material necessary to build and complete said hotel.

(n) That when plaintiff submitted said written estimate, he explained to defendants that it ran more than the amount that defendants had been counting on, viz., $340,000, but that the excess was due to the fact that plaintiff had made his written estimate liberal and that, in fact, the building would cost substantially less than said estimate, but that in any event, the estimate represented the outside and maximum figure and that the defendants could depend upon it that the proposed hotel building would not, in any event, cost more than said written estimate.

(o) That defendants did rely upon the advice and estimate of plaintiff and had full faith and confidence in his ability to fix the ultimate cost. That they would not have proceeded with the building if they had not relied upon such advice and estimate, but relying thereon, did proceed with the construction in the month of April, 1927.

(p) That the plaintiff, as part of his duties, was bound to exercise superintendence over the construction of the building and keep account of the costs. That defendants left such matters in his hands and relied upon him as their agent to protect them in and about such matters and keep them advised, and they had no way of otherwise keeping in touch with such matters.

(q) That in truth and in fact the actual cost of the material and labor of said building, not counting other incidental expenses, was approximately $500,000, or fully $125,-000 in excess of the estimate rendered by plaintiff, as aforesaid. That plaintiff was either incompetent to make a reliable estimate of the cost of the building, or he knowingly underestimated such cost and led the defendants into a false reliance upon his unreliable estimate and involved defendants in expenditures far beyond their expectations and financial provisions.

(r) That the first knowledge the defendants had that the building was going to cost more than plaintiff's estimate was late in the fall of 1927, when the building was about two-thirds completed, and plaintiff negligently and recklessly delayed giving the defendants any suggestion that the cost was going to exceed his estimate until it had advanced to that stage where defendants could not alter the character of the building or abandon it.

(s) That said hotel, under average and ordinary conditions prevailing in the hotel business in Amarillo, has been and will continue

to be incapable of producing revenue sufficient to yield a fair return and profit on more than $375,000 and the excess cost of at least $125,000 constitutes a total loss to the defendant Capitol Hotel Company, Inc. That such loss is due directly to the defendants being misled by the plaintiff's wrongful and erroneous estimate as aforesaid, and the fault of plaintiff in making such unreliable and misleading estimate has resulted to defendants' great damage in the said sum of $125,000, for which sum they pray judgment.

"The undertaking of an architect implies that he possesses skill and ability, including taste, sufficient to enable him to perform the required services, at least ordinarily and reasonably well; accordingly, he must exercise in any given case his skill and ability, his judgment and his taste, reasonably and without neglect. An architect is responsible not only for actual fraud committed by him, but also for a negligent disregard of his duty. In the preparation of plans and specifications, the architect must possess and exercise the care and skill of those ordinarily skilled in the business. If he does so he is not liable for faults in construction resulting from defects in the plans as his undertaking does not imply or guarantee a perfect plan or a satisfactory result, it being considered enough that the architect himself is not the cause of any failure and there is no implied promise that miscalculation may not occur. Where, however, the architect does not possess and exercise such care and skill, he will not only be liable in damages for defects in his plans, but he can not recover compensation for them." 5 C. J. 269, 270.

"Where plans are required for a building not to cost more than a certain sum or are accepted on condition that it can be erected for a given amount, there can be no recovery by the architect unless the building can be erected for the sum named or unless the increased cost is due to special circumstances or to a change of plans by direction of the owner. * * * Where an architect submits estimates of the probable cost of the building, he can not recover for his plans unless the estimate is reasonably near the cost." 5 C. J. 262.

■ The above quotations announce in a general way the duty of an architect and his rights to recover compensation for his services. The allegations of the first count show a breach of this duty and a failure to fulfill his obligations under the contract. That part of the first count wherein it is alleged that Rittenberry claimed to be a skilled, proficient, and experienced architect, with ability to estimate in advance and with reasonable accuracy the cost of buildings which he might plan and design, and the further allegations that Rittenberry understood in advance that

the hotel would not be constructed until the probable cost had been estimated and that the cost should not exceed $375,000, and that the building must be so planned that it could reasonably be expected to produce a reasonable amount of revenue upon the money invested therein, and that defendants concluded to build only after Rittenberry's estimate showed that they could erect a hotel with 150 guest rooms for the amount of his estimate with the reasonable expectation of deriving a fair income from their investment, are all facts which may properly be alleged as matters of inducement and evidence to prove such allegations, we think, would be admissible. 22 C. J. pp. 1202, 1253; 49 C. J. 139; 4 Ency. Pldg. & Pr. 606.

In P. & N. T. Ry. Co. v. Amarillo Street Railway, 171 S. W. 1103, 1105, Chief Justice Huff, speaking for this court, said: "In testing the charge of the court given in this case, it will be necessary to inquire into the nature of the action brought; that is, whether it is ex contractu or ex delicto, and whether a breach of a contract or a suit in tort. It could not in the strict legal sense be a suit in tort; that is, 'a wrong done independent of contract.' But there are wrongs which will maintain an action on the case, known to the common-law pleading, committed in the nonobservance of duties which are but the implication of contract obligation. Wherever there is carelessness, want of reasonable skill, or the violation or disregard of duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, an action in tort lies in favor of the party injured. If the transaction had its origin in a contract which places the parties in such relation as that in performing or attempting to perform the service promised the wrong is committed, then the breach of the contract is not the gravamen of the action. There may be no technical breach of the letter of the contract; the contract in such case is a mere inducement and should be so pleaded. It induces, causes, creates the conditions or state of things which furnishes the occasion for the wrong. It is the wrong outside the letter of the contract which is there the gravamen of the suit. Such an action, as we understand, would be ex delicto or at the common law, an action for which case would lie."

In Dudley v. Strain (Tex. Civ. App.) 130 S. W. 778, an architect, who was employed to make plans for improvements to a church not to exceed in amount $8,000, was denied a recovery where his plans if followed would have resulted in an expenditure of twice that sum. Evidence was admitted to show what occurred at the church meeting at the time of taking the subscription to pay for the improvements. It was also held in that case that where the committee relied on him to plan the improvements within the limit of

$8,000, and he failed to do so, he could not recover as the plans were worthless. 4 Elliott on Contr. § 3611, p. 790, note 12.

Appellants cite the case of Edward Barron Estate Co. v. Woodruff Company, 163 Cal. 561, 126 P. 351, 42 L. R. A. (N. S.) 125, in support of their right to recover of Rittenberry the $125,000, which they were required to expend in completing the building in excess of the estimate of $375,000 fixed by Rittenberry. Upon the face of defendants' pleading, there has been a breach of duty or such a degree of negligence or want of skill or fraud as would entitle the appellants to recover at least nominal damages. We are not asked to pass upon the measure of damages. But we are not prepared to say that the $125,000 excess cash is the proper measure. In the instant case, the appellants charged fraud only in the alternative. In any event, we do not agree that the $125,000 would be the measure of appellants' recovery, and the fact that through the erroneous estimate they were required to spend that amount more than they would have expended but for his mistake or fraud, would not, in our opinion, entitle them to recover said sum for the reason that they still own the building, the intrinsic value of which has been enhanced more or less by such additional expenditures. It would be inequitable to permit defendants to retain the building with this added value and at the same time recover the amount of such additional expenditure from Rittenberry. The measure of damages generally for a breach of contract is such a sum as will fully and fairly compensate the injured party for the losses sustained, taking into consideration what was in contemplation of the parties when it was made—in this case a reasonable return on the investment. Because the defendants alleged an erroneous amount as the measure of their damages would not subject their plea to a general demurrer. T. P. C. & O. Co. v. Barker (Tex. Civ. App.) 252 S. W. 809.

The appellee insists that because it is not alleged by appellants that the building as finally constructed is not worth the $500,000, there could be no error in sustaining the demurrer. We cannot assent to this proposition. The allegation is that the building does not and will not be capable of producing revenue sufficient to yield a fair return and profit on more than $375,000. This is tantamount to an allegation that its value for the purposes contemplated by the parties in its construction is not equal to the $500,000 which it cost, and as against a general demurrer, this intendment must be indulged in favor of the sufficiency of that part of the plea.

The appellee further insists that the damages sought to be recovered are so remote and uncertain that the court correctly sustained the demurrer. It is said: Damages may be uncertain, either as to their existence or very nature or in respect to the cause from which they proceed. Where it cannot be shown with reasonable certainty that any damage resulted from the act complained of, there can be no recovery unless there is a cause of action proved entitling plaintiff to recover nominal damages. 17 C. J. 754.

The fact that the proof necessary to establish the damages resulting to the defendants may be made with difficulty does not justify the court in sustaining the demurrer where a duty and a breach of that duty is shown. As said by this court in Grand Prairie Gravel Co. v. Joe B. Wills Company, 188 S. W. 680, 686: "Whatever may have been the ancient rule, the right to recover, as damages for the breach of a contract, such loss of profits with reference to either party is well settled in modern practice. If it be shown that the lost profits were reasonably supposed to have been within contemplation of the parties when the contract was executed and the amount thereof can be proven with reasonable certainty, a recovery of the full amount should not be denied because they may be, in a measure, prospective. In their nature, profits are more or less conjectural or speculative, but the injured party must not be deprived of his remedy because of difficulties lying in the way of proving his damages."

If the anticipated damages are to accrue from collateral agreements and contract, the right to recover would not be thereby abridged. As said in 17 C. J. 748: "Where, however, the collateral contract was in contemplation of the parties to the original or particular contract when it was made, the latter being made with reference to the former, there may, upon a breach of the particular contract, be a recovery for damages for losses sustained or gains prevented with reference to the collateral undertaking."

This principle is discussed in McKibbin v. Pierce (Tex. Civ. App.) 190 S. W. 1149; Grand Prairie, etc., v. Joe B. Wills Co., supra.

In Springer v. Riley (Tex. Civ. App.) 136 S. W. 577, 579, Judge James said, in discussing the degree of proof necessary to entitle a plaintiff to recover for loss of profits: "Reasonable certainty is all that is necessary. The testimony introduced for the purpose of showing what crops would have been produced by defendant on this land was by comparison with what other like land in the neighborhood produced that season."

In Fraser v. Mining Co., 9 Tex. Civ. App. 210, 28 S. W. 714, 715, Judge Neill said: "But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to the amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages

whatever for the breach. * * * The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount." Graham Hotel Co. et al. v. Garrett et al. (Tex. Civ. App.) 33 S.W.(2d) 522.

■ That the net profit to be derived from a hotel containing 150 rooms, which cost $375,000, would be greater than that to be derived from a hotel of the same size which cost $500,000, would seem not to be a debatable proposition unless it should be made to appear that the excess expenditure of $125,000 resulted in more patronage and custom. If Rittenberry was instructed to make his estimate with the view of constructing a six-story hotel of 150 rooms for such a price that the revenue reasonably expected to be derived therefrom would be a fair return on the investment, in view of surrounding circumstances, existing competition, etc., and he undertook to do so and through a want of skill or ability, or because of fraud, misled the defendants by his estimate and caused them to expend more than was contemplated, he is liable. Lane v. Inhabitants of Town of Harmony, 112 Me. 25, 90 A. 546, Ann. Cas. 1915C, 874; Erskine v. Johnson, 23 Neb. 261, 36 N. W. 510; 4 Elliott on Cont. 790, n. 12.

■ If the increased cost was due to changing the original fixed contract to a cost-plus contract, or to subsequent changes and additions made by Mayer during the progress of the work, that would be defensive matter and could not be taken into consideration in passing upon the sufficiency of the pleadings as against a general demurrer. The appellee suggests that every ground for recovery alleged in the first count of the cross-action, to which the court sustained a general demurrer, has been set up as a defense in subsequent parts of the answer and that the jury found all the facts therein alleged against the appellants. The record does not sustain this suggestion. It is true that the general verdict of the jury finds in favor of plaintiff as against the cross-action of defendants, but reference to the court's charge shows that only the second and third counts of the cross-action were submitted for the consideration of the jury, and the rule laid down in Brown v. Spornitz (Tex. Civ. App.) 6 S.W.(2d) 219, and that line of decisions, has no application. The matters upon which the appellants based their cross-action and sought a recovery against Rittenberry are not set up specifically by way of defense, and the verdict of the jury is in no sense a finding upon the

issues tendered in the first count. This suggestion is overruled. Hanover Fire Ins. Co. v. D. W. Ray & Son (Tex. Civ. App.) 26 S.W. (2d) 295.

By their second proposition the appellants insist that the court erred in sustaining several special exceptions to that part of appellants' pleading to which the general demurrer had previously been sustained.

■ Having sustained a general demurrer to the cross-action, the court should not have sustained special exceptions. Maytag Southwestern Co. v. Thornton (Tex. Civ. App.) 20 S.W.(2d) 383. This, with what we have previously said, disposes of the second proposition.

By the third proposition appellants insist that the court erred in permitting Rittenberry to testify with reference to negotiations between Mayer and G. L. Miller & Co., of Dallas, with reference to a loan on the proposed five-story hotel. The substance of the testimony is that while he and Mayer were in Dallas conferring with officers and employees of G. L. Miller & Co., with reference to securing money with which to construct the five-story hotel, such officers and employees made no objection because the rooms were too small. The testimony was objected to because it was incompetent, irrelevant, and immaterial and because the testimony tended to confuse the issues in the case and involved extraneous matters.

■ It is uniformly held that a general objection to the introduction of testimony because it is irrelevant, incompetent, and immaterial, is tantamount to no objection and unless the objector specifically states why the proffered testimony is irrelevant, immaterial, or incompetent, the objection will not support an assignment in the appellate court. El Paso & S. W. Ry. Co. v. Smith, 50 Tex. Civ. App. 10, 108 S.W. 988; Ft. Worth Improvement Dist. No. 1 v. Weatherred (Tex. Civ. App.) 149 S. W. 550; Morgan v. Gordon (Tex. Civ. App.) 13 S.W.(2d) 905; Early-Foster Co. v. Mix-Tex Oil Mills (Tex. Civ. App.) 208 S. W. 224.

■■ "Incompetency" is a general objection which can appropriately be urged only to a witness because of insanity, infancy, senility, conviction of crime, insensibility to the obligation of an oath, and relation to a decedent or other status rendering him incompetent or to certain written evidence declared incompetent by statute, and the objection does not as a general rule apply to oral testimony. We do not assent to the contention that the testimony of previous negotiations between Rittenberry, Mayer, and third parties, looking to the erection of a hotel, whether of four, five, or six stories, is necessarily irrelevant or immaterial to the issues involved in this suit. It appears that two contracts had been made affecting di-

rectly Rittenberry's compensation and the amount thereof was dependent under certain conditions upon the total cost of the building which was finally erected. Part payment had been made to Rittenberry and to other architects and engineers. Some of these payments were made in relation to negotiations preceding the determination of Mayer to erect the six-story hotel. The brief before us filed by appellants urges seventy-seven distinct propositions and a great many of them relate to the introduction of testimony and the rulings of the court with reference to the negotiations preceding the determination to construct the six-story hotel. We will not discuss at length all of the numerous assignments of this character further than is necessary to show the application of the rule of res gestæ, which we think applies to most of the propositions urged.

Mr. Greenleaf (volume 1, § 108) says: "The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others; and each during its existence has its inseparable attributes, and its kindred facts materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, constituting parts of the res gestae, may always be shown to the jury, along with the principal fact; and their admissibility is determined by the judge, according to the degree of their relation to that fact, and in the exercise of his sound discretion; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description."

Professor Wharton defines "res gestæ" as follows: "Those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of anyone concerned, whether participants or bystanders; they may comprise things left undone as well as things done. Their sole distinguishing feature is, that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculated policy of the actors. In other words, they must stand in immediate casual relation to the act—a relation not broken by the interposition of voluntary individual wariness, seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act."

In the early case of Leakey v. Gunter, 25 Tex. 400, the Supreme Court held that it was competent for the plaintiff to prove by parol that he purchased the land and for his benefit, though the deed was taken in the name of the defendant, and that conversations relative thereto which occurred during the negotiations for the purchase were admissible as a part of the res gestæ. Western Med. Arts, etc., v. Bryan (Tex. Civ. App.) 5 S.W.(2d) 862.

In McGowen v. McGowen, 52 Tex. 657, Judge Bonner held that the doctrine of res gestæ is based on the presumption that declarations made at the time with the principal act—evoked by it without premeditation and giving it color and character as explanatory of the mind and purpose of the actor—are as reliable as the act itself of which it is a part and can be proved along with it without the oath of the party, and further held that if the acts and transactions extended over a long period of time and was continuing in its character, the rule of res gestæ applied.

■■ It is a fundamental rule that whatever is said and done during negotiations leading up to a contract, and while the business is being transacted, should be admitted in evidence if such acts or declarations throw any light upon the main fact and that written memoranda made in the course of business are generally admissible. Goldman v. Blum, 58 Tex. 630; Watson v. Winston (Tex. Civ. App.) 43 S. W. 852; Texas Company v. Burkett (Tex. Civ. App.) 255 S. W. 763.

In Neblett v. McGraw & Brewer, 41 Tex. Civ. App. 239, 91 S. W. 309, the contractor sought to recover a balance due upon a construction contract, and the court held that the contract was admissible as part of the res gestæ when pleaded by either party, and in that case the court admitted proof going to show that delay in construction was caused by the failure of a brick company to furnish brick as fast as they were needed.

In McClellan v. McLemore (Tex. Civ. App.) 70 S. W. 224, the court held that evidence was admissible to show that a great number of changes had been made by the architect in the original plans, that a great deal of extra work was required, and to show what work was actually done under the direction of the architect as well as under the original plans. It was further held that a written memorandum of the work to be done made by one of the contractors when he was preparing his bid was admissible.

■ It is further well established that under the res gestæ rule statements made by agents and servants of the parties when within the scope of such employee's authority and during the continuance of the agency or employment are admissible against the principal. 2 Tex. Jur. 530; Henderson v. Railway Co., 17 Tex. 560, 67 Am. Dec. 675; Tuttle v. Turner, etc., Co., 28 Tex. 759;

C. Aultman & Co. v. York, 71 Tex. 261, 9 S. W. 127; City of Austin v. Nuchols, 42 Tex. Civ. App. 5, 94 S. W. 336; Farmers' M. & E. Co. v. Hodges (Tex. Civ. App.) 248 S. W. 72; Yarborough v. Davis (Tex. App.) 15 S. W. 713.

■ It appears from the record that the appellants have attacked the plans made by Rittenberry for the five-story hotel, and under the Neblett Case, supra, they were admissible in connection with any testimony tending to explain them. These plans had been submitted, not only to Miller & Company, but to the Illinois Standard Mortgage Company, to whom Mayer applied for a loan after Miller & Company became insolvent. When these plans were submitted to the Illinois Standard Company, Rittenberry, Mayer, and his attorney were all present. The fact that Miller & Company had approved them was admissible in Rittenberry's behalf under the charge that he was unskilled and incapacitated. If the five-story plans as prepared by Rittenberry met the approval of Mayer and of one loan company, Rittenberry was entitled to prove that fact in view of the charges made against him upon the ground of carelessness, negligence, and lack of skill.

■ We may state generally that we think the court correctly admitted all of the evidence which was otherwise competent, over the specific objections urged, showing the dealings and transactions, as well as conversations, between the parties from the time the negotiations commenced, because, as said in 10 R. C. L. 974, without such testimony the court and jury could not obtain a clear understanding of the nature of the litigated matters. All the testimony which was incidental to the main fact and explanatory of it, including acts as well as words and connected with the main fact, constitute a part of the transaction, and without this testimony, while it may be voluminous, the jury could not properly understand the main issues between the parties. It is held that an insurance agent who has given a bond for the faithful performance of his duties is sued by the company to recover a balance alleged to be due from him for premiums which it is charged he has collected, should be permitted to introduce his reports made to the company in the usual course of business because they are a part of the res gestæ. The rule has been further extended in brokerage suits so as to admit conversations between the broker and purchaser or the owner and purchaser in the absence of the other party to the suit, because such conversations are part of the res gestæ and what has been said and done is necessary to enable the jury to get a clear understanding of the issues and the rights of the parties. Mitchell v. Crossett (Tex. Civ. App.) 143 S. W. 965; Haskell v. Merrill (Tex. Civ. App.) 242 S. W. 331.

■ By the fourth proposition the appellants challenge the action of the court in overruling their objections to the testimony of Rittenberry while comparing the plans of the five-story hotel with the plans of the six-story building which was actually constructed. The objections are too general to require consideration. Aside from that we think the testimony was admissible under the res gestæ rule. It had been charged that Rittenberry was careless and negligent, and an exhibition of the plans of the two proposed hotels was certainly competent evidence to show the extent of his labors as well as the nature of his work. The five-story plans were referred to in the deed of trust which Mayer and the Capitol Hotel Company executed to the Chicago Trust Company as trustee for the Illinois Standard Mortgage Company and this instrument has been introduced in evidence. We think the proffered testimony was not only competent but was material to Rittenberry's defense and relevant to the issues made by the pleadings.

■ In the second count of their cross-action, defendants made certain allegations with reference to the brick work and the color of the mortar to be used, and that after the bricklaying had continued for about a day and a half, plaintiff, in order to be captious and without any good reason, caused the part of the wall that had been constructed to be torn down and the bricks cleaned, which cost $300, and for which amount appellants asked judgment against Rittenberry. While evidence was being introduced upon this item, Rittenberry testified that he told Mayer that the color did not correspond with the bricks and that after a day and a half he saw the brick masons tearing part of the wall down and that the masons told him that Mr. Mayer did not like the color of the mortar that they had used and had ordered them to tear down the wall and start over again, using a different color of mortar. We think this testimony was admissible. The building was being constructed upon a cost-plus plan. The evidence shows that from time to time Mayer exercised his right and had changes made and certain additions, and that while Brennan & Company, as contractors, were doing the work, under the particular contract Mayer was the final authority. Prima facie the brick masons who made the statement to Rittenberry were Brennan's servants because he had employed them and was paying their wages, but when Mayer ordered them to tear down the wall and clean the mortar off of the bricks, the brick masons became Mayer's agents and servants to that extent and their declarations while engaged in the work were admissible against Mayer in behalf of Rittenberry, whom Mayer in his pleadings had charged with being responsible for having the wall torn down.

■ The court did not err in permitting Rittenberry to testify that if the contract for the manufacture of certain ornamental plaster work to be used in the building had been let about the 1st or 15th of August, that there would have been time enough for one capable of executing the contract to have manufactured the ornamental plaster work before it was needed for use in that part of the building where it was intended to be used. Rittenberry had shown that he was an expert and qualified to testify with reference to the matter and we think his opinion was clearly admissible. He showed that he was familiar with that kind of work, had specified and used such work on numerous other buildings, and while the assignment does not state the specific objection made to the testimony, we think it was admissible under the general rules.

■ Rittenberry had testified that after the order given Daltex Art Stone Company had been withdrawn from that company and the contract had been relet to the Prosser-Rigby Company of Tulsa, Okl., he was permitted to further testify, over the objections of appellants, that Joe Brennan, one of the contractors, went to Tulsa to see why the Prosser-Rigby Company were not shipping the material. He said: "We had had difficulty in getting the work completed by the Prosser-Rigby Company. We were being delayed with shipments. They were not getting along as early as we expected and Mr. Brennan went over there to hurry those shipments up." We think this testimony was clearly admissible under the res gestæ rule. Rittenberry was charged in part with the duty of having this material prepared and ready for the contractor. Moreover, the appellants in their cross-action alleged that Brennan, in an effort to relieve the emergency, went to Tulsa and conferred with Prosser-Rigby Company and then and there secured necessary and proper sizes and designs for the ornamental plaster and had same shipped out immediately to Amarillo, Tex., where they arrived in due course of transportation. Nowhere in the assignment is it asserted that Rittenberry did not know why Joe Brennan went to Tulsa. He seems not to have been cross-examined as to the means of his knowledge, and we must presume that he, as supervising architect, sent Brennan for the purpose stated.

■ Further objection is made to Rittenberry's testimony that the contract for the ornamental plaster work was first let to Daltex Art Stone Company over plaintiff's recommendation that the same should have been awarded to the Prosser-Rigby Company and that on account of delays, the contract was recalled from the Daltex Company about six weeks later and let to the Prosser-Rigby Company. This testimony was certainly material to Rittenberry's defense, since he had been charged specifically with being negligent and careless and causing the delay.

■ Rittenberry was further permitted to testify that all of the plans for the construction of the six-story building had not been completed on April 11, 1927, and over objections made the further statement that the details necessary to the drawing of the entire plans had not been settled prior to that time. This was objected to upon the ground that it was an opinion and a conclusion. We think not. It seems to be the plain statement of a fact by one competent to testify. He was the man responsible for drawing the plans and was the best possible witness upon that point. A further objection to the statement is that it was self-serving in character. We confess our inability to get the force of that objection. We have not read all of his testimony, but what we have read seems to be self-serving, and we think he took the witness stand for the purpose of giving just that character of testimony. Parties do not ordinarily qualify as a witness to testify for their adversaries, and as long as his testimony was otherwise admissible, it should not have been excluded because it was given in his own interest. If as a matter of fact the details necessary to the drawing of the entire plans had been settled, appellants had the right to introduce any relevant rebuttal testimony upon that issue.

■ The appellants further objected when Rittenberry testified that Mayer supervised the letting and actually let the subcontracts on the hotel job. The objection to this was that it was an opinion and conclusion of the witness. We think it is a plain statement of a fact. If the testimony was false, appellants could contradict it by the testimony of Mayer, as well as the evidence of the subcontractors and the written contracts themselves, copies of which Mayer evidently had.

■ Objection was made to Rittenberry's testimony that taking into consideration the fact that the building in question was constructed under a cost-plus contract and the further circumstances that existed and under which it was constructed, $500,000 was a reasonable cost. The objection to this testimony was that it was irrelevant and immaterial, which, as we have before stated, is not an objection. He knew the circumstances under which it had been constructed and the manner in which the whole transaction had been handled and as an expert was certainly well qualified to express his opinion as to the reasonableness of the cost.

It appears that a structural engineer by the name of Joor had rendered certain services in and about the hotel project, the cost of which Rittenberry had testified was due to be paid by Mayer. Defendants' counsel then asked Rittenberry: "Did you tell Mr. Mayer

that any part of the Joor bill was to be charged to him?" To which he answered: "No, I did not talk to him about it." This testimony, upon motion of appellee's counsel, was stricken. There seems to be no evidence showing that any part of Joor's bill against Rittenberry was ever charged to Mayer, in fact, except a certain sum with which Rittenberry had credited Mayer's account with him, so it becomes immaterial whether Rittenberry had ever talked to Mayer about Joor's account. It would appear that the testimony is wholly immaterial unless it had been charged to Mayer, and concerning this fact Mayer was as well informed as Rittenberry. Appellants' brief fails to show the importance of the matter complained about by this assignment.

Rittenberry was asked by appellants' attorney if, during the course of the construction of the building, there were delays in the progress of the work through any fault on Rittenberry's part, and if there was also "overhead" going on during the delay. There does not seem to be any controversy that overhead expenses incident to such an undertaking were actually being incurred during delays. The record shows that there were delays, but whether the delays were due to the negligence of Rittenberry was a contested issue and that point was not included in the question objected to. If the ruling of the court was error, it is harmless.

■ Rittenberry, having first testified that a reasonable fee for preparation of the plans, such as he had prepared in this case and for superintending the construction of the building, was 5 per cent. of the cost of the building, on cross-examination defendants' counsel asked him: "You don't mean that is a reasonable fee regardless of how poorly the architect performs his services." Upon objections, the witness was not permitted to answer. It appears that the question is unnecessary. Plaintiff claims to have performed the services in a proper and diligent manner, and it follows that the 5 per cent. fixed by him was without reference to an architect who had poorly performed his services. We think this contention is without merit.

■ By the fifteenth proposition the appellant insists that the court erred in excluding the testimony of Ed Mayer in which he undertook to detail a conversation he had with the Chicago architect Carnegie, in the absence of Rittenberry, during which Carnegie had said it would be unethical for him to revise Rittenberry's plans without the latter's consent.

Whether Rittenberry's plans were sufficient or not was, of course, a pertinent inquiry, but whether Carnegie "was entirely sensible to the ethical features of the matter" was foreign to the issues to be tried. Whether Carnegie's revision of the plans would have been ethical or unprofessional had nothing whatever to do with Rittenberry's right to recover, and even if the statement had been made in the presence of Rittenberry, it was immaterial and irrelevant and properly excluded.

■ Carnegie should not have been permitted to testify as to what effect Rittenberry's failure to have plans ready for the contractor when needed would have upon the progress of the work and in increasing the cost thereof, unless it appeared that he was familiar with all the circumstances. The question propounded to him was not hypothetical. While the failure, if any, of Rittenberry to have plans ready when needed by the contractor was relevant to the issue of negligence, unless Carnegie knew all the circumstances or conditions, or these were included in a hypothetical question, his testimony should not have been admitted.

■ The witness Hood was shown to be the clerk of McLachlan. McLachlan was shown to be Rittenberry's superintendent on the job and also the agent of Mayer in checking material, etc., and was therefore the agent of both parties to this suit, and if Hood knew that McLachlan was Rittenberry's superintendent, it was the statement of a fact which was corroborated by the testimony of Rittenberry himself. This contention, therefore, is without merit. If Hood had actual knowledge of the fact, it was proper for him to testify that the architects wanted the south wall torn down and changed.

■■ The plans and specifications of both the five-story and the six-story hotels as proposed were properly admitted in evidence, together with the explanatory testimony of the contractor Brennan. The record shows that these plans and specifications are highly technical and not easily understood by the average juror, and from our inspection of them, we conclude that they certainly needed explaining by someone qualified to do so. The rule is that maps, plats, plans, and instruments of the character of the drawings and specifications introduced, may be admitted, together with the explanation of the party who made or drew such instruments or any witness qualified to testify with reference thereto. Armendaiz v. Stillman, 67 Tex. 458, 3 S. W. 678; Hanrick v. Dodd, 62 Tex. 75; Besson v. Richards, 24 Tex. Civ. App. 64, 58 S. W. 611.

■ The record does not show that the contractor Brennan was attempting to place a legal construction on either of the instruments about which he was testifying, and his testimony was not objectionable upon that ground.

■■ Of course, the plans and specifications of the $340,000 hotel were the best evidence of what they required with reference to marble walls, columns, floors, and any other item contained therein; but the rule is that

when facts are established by competent and admissible testimony, the wrongful admission of incompetent or improper testimony is harmless error, not requiring reversal.

By the twenty-fifth proposition appellants contend that the deposition testimony of Tom P. Brennan, in response to an interrogatory asking whether or not extra labor was incurred by reason of the installation of a long list of specified items, such as kitchen equipment, including refrigeration boxes, dish washing machines, potato peelers, stoves, bakeries, pots, sinks, and the like, resulted in additional cost and extra labor to install them, should have been excluded.

The testimony was not improper, but we confess that we are not able to see the necessity for any such question. While the jury could not form any estimate of the extent of extra labor or the amount of extra cost incident to the installation of these things, they must necessarily know that it all added to both the cost and labor. The existence of resulting facts may be inferred by the jury from the proved existence of relevant facts. Spencer v. Pettit (Tex. Civ. App.) 17 S.W.(2d) 1102; Cotton v. Cooper (Tex. Civ. App.) 160 S. W. 597; St. L. & S. W. Ry. Co. v. Cleland, 50 Tex. Civ. App. 499, 110 S. W. 122, 123.

The objection to the testimony of Tom P. Brennan, one of the contractors, that extra labor in the sum of $3,486 was incurred upon the plaster contract of the hotel job, was properly admitted. He states it as a fact and the record does not show that he was testifying without information. Since he had to do with hastening the work of completing the plaster contract and the question of his qualification is not raised, the objection is without merit.

What is here said also disposes of the objection to his testimony relating to the additional expenses of plumbing and mechanical equipment over and above that specified in the plans for the $340,000 contract. It is true that the contract itself would be the best evidence, but where that was introduced in evidence, his explanation of what it showed was properly admitted, and in either event, the error, if any, would be harmless. Bills of exception Nos. 27 and 28 show that the witness was perfectly familiar with all the items of the plans and specifications in detail and that he was testifying from actual knowledge. If he knew from an acquaintance with the plans and specifications of the $340,000 hotel what items in the way of steam boilers, laundry equipment, lavatories, drinking fountains, bathroom equipment, etc., were provided thereby, he was certainly qualified to state what additional items had been provided and built into the hotel actually constructed by him with six floors instead of five.

This also disposes of the objections urged

under the twenty-eighth and twenty-ninth propositions.

The materiality of the testimony objected to as shown by the thirtieth proposition is not apparent from the record. The question was objectionable because leading and should have been excluded upon that ground. The materiality of establishing what Brennan's commission would have been upon the contract of a hotel which had never been constructed is not apparent, and until its materiality was shown, the testimony was not admissible.

What is said here also disposes of the thirty-first and thirty-second propositions.

It is a fundamental rule of procedure that in the examination of a witness, a question which assumes the existence of facts in issue, and which have not been established, is improper. 40 Cyc. 2433; Prather v. McClelland (Tex. Civ. App.) 26 S. W. 657; Id., 76 Tex. 574, 13 S. W. 543. However, we find that there is testimony in the record to the effect that Mayer had prepared the estimate himself and at his request Rittenberry had signed it. The question was not therefore improper under the circumstances.

Whether Mayer intended to build an expensive residence during the summer of 1927 and had discussed it with Rittenberry was foreign to any issue in the case, and it may be that proof of that fact was prejudicial.

It was not error to exclude the testimony of Carnegie as to how long it would reasonably have taken to complete the construction of the six-story hotel, for he testified that he was not in Amarillo while it was being constructed and knew nothing of the circumstances and conditions existing at that time.

This disposes of the thirty-sixth assignment also.

Both Mayer and Rittenberry had testified freely with reference to the plans which the latter had made for the four-story hotel and further evidence with reference thereto was relevant.

The thirty-eighth, thirty-ninth, and fortieth propositions are overruled for reasons heretofore stated in passing on the admissibility of evidence concerning the proposed four and five story buildings.

By their forty-first proposition the appellants insist that the court erred in admitting in evidence the "flat-sum contract" made between appellants and the Brennan Construction Company. This contract is dated February 1, 1927. On April 1st, thereafter, the hotel company and the Brennans entered into a final contract for a six-story building which recites: "Whereas, the owner and contractor herein did, on the 1st day of February, 1927, make and enter into a contract covering and including the construction of the six-story building last above mentioned, which

contract is herein referred to as though fully set out herein and which said last named contract the owner and contractor, parties hereto, herewith agree shall by the signing of this contract become null and void and of no further force and effect."

From this recital it seems clear that the contract of February 1st was entirely abrogated and the briefs present no reason why the court should have admitted it. Its admission, however, aside from the fact that it incumbers the record, seems to be harmless error. We think that the cost-plus contract dated April 1, 1927, under which the hotel was finally constructed, was properly admitted, since it formed the basis, as we understand the record, of appellee's recovery as finally awarded.

It is not clear from the record upon what theory the specifications for the heating, plumbing, and electrical work under the five-story plans were introduced in evidence, unless possibly it is upon the theory that appellants attack the five-story plans and specifications as being entirely impracticable and charge Rittenberry with negligence and incapacity with reference thereto. The admission of these plans under this view would not constitute reversible error. This is also true of the complaint urged under the forty-third proposition. In view of the fact that the appellee by his trial amendment seeks to recover upon a quantum meruit would, we think, make this testimony admissible.

While Rittenberry was upon the witness stand, his counsel said: "If I understand your answer, what you meant was that what you did say on the occasion of signing the contract of September 30, 1926, you told Mr. Mayer that if a different kind of building from the kind of building provided for in the contract was built, that you would expect your contract of April 8th to hold good?" But for the fact that the printer and the stenographer have put an interrogation point after this recital, we would not take it to be a question, as there is not an interrogative word in it. The witness answered it in the affirmative. The statement was made, of course, in the presence and hearing of the jury, and violated the rule against leading questions, if, indeed, it can be classified as a question, because it put the very words which counsel desired to have the jury hear in the mouth of the witness. It was upon a material issue in the case; in fact, the controlling issue upon which the appellee expected to recover. The appellee insists that because the same fact had been elicited from Rittenberry several times before, it is not error. If the witness had already testified, even one time, to the same fact, then eliciting it again does not atone for the violation of the rule inhibiting the asking of leading questions, but rather aggravates the violation, in that there is also a breach of the rule against repetition.

The court did not err in giving a peremptory instruction upon the ground asserted that the architect had breached his duty in failing to audit all of the accounts for the proposed building, because there is evidence tending to show that when Mayer decided to construct the building under a cost-plus contract, he and others assumed the duty at least in part of auditing these accounts, and the evidence further tends to show that he did not have all accounts submitted to Rittenberry, but passed upon many of them himself.

By several propositions the appellants insist that the court erred in refusing special charges requested by them, which, if given, would have authorized the jury to find against plaintiff as to his right to recover anything and to also find in appellants' favor for damages because of plaintiff's negligence, want of skill, and incompetency. Several of the charges as requested sought to fix the measure of recovery at 6 per cent. upon the amount of money borrowed. In our opinion, this would not be the measure of appellants' recovery, if anything they were entitled to have against plaintiff. If through plaintiff's negligence the work was delayed 'and the completion of the hotel postponed, Mayer and the hotel company could recover only such damages as naturally resulted from the delay. Some of the requested charges might possibly be applicable in a suit between the Brennan Construction Company and Rittenberry, but they do not apply here. As said in 4 Tex. Jur. 724 § 12: "If he (the architect) fails to exercise such skill and diligence in the preparation of plans or if in the plans submitted there are defects upon which a liability on his part may be predicated, he is liable for such damages as are the just result of his conduct." Pierson v. Tyndall (Tex. Civ. App.) 28 S. W. 232; O'Neil Engineering Co. v. City of San Augustine (Tex. Civ. App.) 171 S. W. 524; Graham Hotel Co. et al. v. Garrett (Tex. Civ. App.) 33 S.W.(2d) 522.

By the fifty-fourth proposition the appellants insist that because incorrect construction statements had been forwarded to the mortgage company with the knowledge of plaintiff, the latter was liable to the mortgage company in some amount. There is no merit in this contention, because it appears that these construction statements were not signed by Rittenberry and it is not made plain that he ever saw any of the statements. This being the case, there is no element of estoppel in it.

What we have already heretofore said with reference to the duty of Rittenberry disposes of the fifty-fifth proposition.

Paragraph 2 of the court's charge partially submitted the matters of defense as against

Rittenberry. The court instructed the jury as follows: "You are further instructed that if you find and believe from the evidence that the said E. F. Rittenberry did not superintend or cause to be superintended the construction of said building with reasonable care and diligence or did not audit or cause to be audited the accounts and that the said Capitol Hotel Company, acting by and through Ed R. Mayer did not employ some person other than the plaintiff to audit the accounts for its building operations, but looked to the plaintiff to audit said accounts as provided in the contract of April 8, 1926, then you will find for defendants."

One of the issues made by the appellants' pleading was that through the negligence of Rittenberry and his agent Carder in failing to approve the ornamental plaster patterns, the completion of the hotel was unreasonably delayed, and appellants further alleged that the delay was caused by Rittenberry's negligence in failing to superintend and approve and direct the work as it progressed, resulting in unreasonable delay. Another ground of defense, which, if true, tended to defeat Rittenberry's right to recover, was his delay and unskillfulness in the preparation of the plans and specifications for the six-story building. The appellants requested special charges Nos. 11, 12, and 13, which the court refused. We think this was error. Appellants were entitled to an affirmative presentation of all their defenses. They were further entitled to have the issue of Rittenberry's want of skill and ability in estimating the final cost of the building submitted to the jury and his right to recover if through his negligence and ignorance the building cost a great deal more than his estimate. Of course, Rittenberry's contention is that after the abandonment of the original contract with the Brennan Construction Company and the new contract to construct the hotel upon a cost-plus plan, the cost of the building was greatly augmented by the action and directions of Ed Mayer, for which he was not responsible. This contention, however, did not deprive defendants of the right to have their side of the issue affirmatively submitted.

Section 1, subdivision A, of the court's main charge is, in part, as follows: "If you find and believe from a preponderance of the evidence that the plaintiff E. F. Rittenberry, acting under the contract of April 8, 1926, rendered services as architect in furnishing preliminary sketches, working drawings and specifications, detailed drawings and general superintendence of the building operations and in auditing all of the accounts for the Capitol Hotel building and that in rendering such services he exercised such degree of care and skill in connection therewith as is exercised by ordinarily careful, skilled and diligent architects under like or similar circumstances and that the Capitol Hotel Co.

Inc., acting through Ed R. Mayer knew that he, Rittenberry, was rendering said services under said contract, if he did so render them, and that said Capitol Hotel Co. Inc., accepted said services * * * then you will find for the plaintiff E. F. Rittenberry against the defendant Capitol Hotel Co., five per cent of such sum as you may find was the actual cost of the construction and mechanical equipment of said Capitol Hotel building," etc.

The first criticism is that the charge ignores the requirement that a mutual understanding and meeting of the minds upon the contract of April 8, 1926, was necessary.

We think this is hypercritical, because, as expressed in the charge, if the hotel company or Mayer knew Rittenberry was rendering such services, the law would imply an agreement.

In so far as said paragraph of the charge refers to the act of Rittenberry in "auditing all accounts" for the building, it was improper, because Rittenberry freely admitted that he did not keep an account of the cost being incurred on the building and did not audit them. That part of the charge, therefore, was upon an issue not raised by the evidence.

This portion of the charge was further objected to because it was on the weight of the evidence in that the court submitted whether the defendant Mayer "employed some person other than the plaintiff to audit the accounts for the building operations and did not look to said Rittenberry to audit them." We overrule this objection because there is testimony in the record from which the jury might have inferred that Mayer audited the accounts himself and had Brennan and others to do so. Of course, if Mayer did not look to Rittenberry to audit the accounts, the failure of the latter to do so would in no measure affect his rights to recover.

To that part of the same paragraph of the charge the defendants further object because it ignores the amended contract of September 30, 1926, in which the plaintiff's compensation is fixed at the maximum sum of $12,250. Mayer, of course, was insisting that in no event could Rittenberry recover more than that sum. On the other hand, Rittenberry insists that he was not limited to $12,250 upon the six-story hotel, but was entitled to recover at the rate of 5 per cent. fixed by the contract of April 8th. The court did not err in submitting this contention and the jury seems to have found with Rittenberry upon that point. The two contracts relating to compensation, that is, the one of April 8, 1926, and that of September 30, 1926, must be construed together in so far as Rittenberry's right to recover upon a contract is concerned. He, however, insists and by his trial amendment claims the right to recover under a quantum meruit. It was proper for both theories to be submitted to the jury.

The remaining propositions are either without merit or have been disposed of by what we have heretofore said.

For the reasons stated, the judgment is reversed, and the cause remanded.

### On Motions for Rehearing.

Both parties have filed motions for rehearing and written arguments. We have given their contentions careful consideration and are still of the opinion that the judgment should be reversed and the cause remanded, though we will in some particulars modify and correct the original opinion.

The appellee's first contention is that the trial court correctly sustained the demurrer to the appellants' cross-action, because every essential fact constituting the cross-action was contained in appellants' defensive pleadings and such facts were resolved by the jury against appellants under proper instructions from the court. We think this contention is too broad and is not sustained by the record. In the court below the appellee made no issue whatever with respect to whether he had represented that the hotel in question could be built for $340,000 and that issue would not necessarily be involved in order that plaintiff might make out a prima facie case. This issue was interposed by appellants. The ground of the cross-action was, in the main, misrepresentations made by Rittenberry to the appellants concerning his qualifications, skill, and ability in respect to the work for which he was to be employed, and they seek to defeat his recovery and recover damages for fraud in the matters of inducement with reference to the cost of the six-story hotel, which they alleged appellee represented could be built for $340,000. In the cross-action it is charged that the first representation that the six-story building could be erected at a cost of $340,000 was made in January, 1927, and that in April, 1927, a written estimate was made fixing the probable cost at a sum not to exceed $375,000.

The appellee further contends that because the appellants did not allege reliance upon the representations made by Rittenberry that the court properly sustained the general demurrer. It is alleged by appellants that: "Plaintiff well knew that the defendants would not proceed with said hotel venture except in reliance upon an estimate of cost thereof. * * * That after the plans for said hotel were revised to call for a six-story building following the conference in Chicago in the month of January, 1927, and in response to inquiries in that regard, the plaintiff claimed and represented to these defendants a number of times that said building would not cost more than the amounts the defendants had appropriated and arranged for that purpose, namely, $340,000.00." "That the plaintiff herein well knew and understood that the defendant Capitol Hotel Co., Inc., would have been wholly unwilling to proceed further with the hotel venture and involve itself in the heavy expenditures of such an enterprise if it had any idea that such hotel would cost more than the ratio above stated." As against a general demurrer, these and other similar allegations were sufficient to show that the appellants relied upon the estimate made by Rittenberry, and Mayer testified without objection: "I relied absolutely upon Mr. Rittenberry's representations that the building that he had designed could be constructed within the cost of $340,000.00."

The appellants further contend that we erred in holding that the court erred in admitting testimony to the effect that on August 18, 1927, Mayer contracted with Rittenberry for plans for a $40,000 residence which Mayer contemplated building, the contention being that this evidence was admissible to discredit Mayer's allegation and evidence attacking the competency and ability of Rittenberry. The issue was the competency, skill, and ability of Rittenberry to draw the plans, specifications, and make estimates upon a six-story hotel building to cost about $375,000. Mayer had been dismissed from the suit and was no longer a party to the action. Proof of the fact that he contemplated having Rittenberry plan a house for him was certainly not admissible against the hotel company, nor either of the defendants. His negotiations looking to the building of a residence was a collateral matter and could not be inquired into for the purpose of discrediting him as a witness in this action. Cooley v. Boiders (Tex. Civ. App.) 128 S. W. 690; Dimmitt v. Robbins, 74 Tex. 441, 12 S. W. 94. Moreover, Mayer's intention to have Rittenberry act as architect in the planning of the residence and proof of that fact was tantamount to the expression of his individual opinion as to Rittenberry's ability and even a party's testimony cannot be discredited by proof of his opinion of the merits of another party. Kirk v. State, 48 Tex. Cr. R. 624, 89 S. W. 1067; H. E. & W. T. Ry. Co. v. Adams, 44 Tex. Civ. App. 288, 98 S. W. 222; 6 Jones Commentaries on Evidence (2d Ed.) p. 4733.

We have reviewed the record with reference to the objectionable testimony elicited from Rittenberry by his counsel through the following statement to the witness: "If I understand your answer, what you meant was that what you did say on the occasion of signing the contract of September 30, 1926, you told Mr. Mayer that if a different kind of building from the kind of building provided for in the contract was built, that you would expect your contract of April 8th to hold good."

Rittenberry had previously testified that preparation of the six-story plans would be governed by the contract of September 30th. He had not testified that it would be governed

by the contract of April 8th. There would have been no impropriety in having the witness correct his statement relative to the two contracts if he had inadvertently named the wrong one, but for counsel to make the correction in the manner shown by the record, we think was a gross violation of the rules governing the production of testimony.

We have again reviewed the record and are convinced that there is an abundance of testimony in the record raising the issue of the negligence of Rittenberry with reference to the ornamental plaster work for the hotel job. It is unnecessary to set out this testimony at length.

■■ We held in the original opinion that the trial court erred in refusing to give special charges 11, 12, and 13, asked by appellants, and our language apparently approves the charges as being technically correct. We do not mean to hold that the charges correctly gave the law to the jury. Rittenberry's negligence and delay in furnishing plans and drawings would not defeat his recovery, but, as stated in the original opinion and in the quotation from 4 Tex. Jur. 724, he would be liable for such damages as resulted from his negligence. Nor did we intend to hold that his failure to audit the accounts would be a complete defense to his action to recover compensation for his plans in the light of the fact that the building had been constructed in accordance with his plans. While special charges 11, 12, and 13 were not technically correct, appellants had specifically objected to the defects in the court's general charge and these objections were sufficient without the necessity of presenting charges which were technically correct. G., C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183.

The appellee insists that the rule governing the right of an architect to recover as stated in 5 C. J. pp. 269, 270, and quoted with approval in the original opinion, is not the law in this state. We think it announces the correct rule as declared in the Texas decisions cited in the original opinion and in Smith v. Dickey, 74 Tex. 61, 11 S. W. 1049; Emerson v. Kneezell (Tex. Civ. App.) 62 S. W. 551; and Hall v. Parry, 55 Tex. Civ. App. 40, 118 S. W. 561.

■ The contract of February 1, 1927, which fixed the price for the construction of the hotel at $340,000, shows upon its face that it was the contract for the six-story building. This was introduced in evidence. Tom P. Brennan, one of the contractors, testified at considerable length by deposition, giving the difference between the details, equipment, and appurtenances of the five-story hotel and of the six-story hotel which was finally constructed. It is clear from this testimony of

the witness that he did not have the contract of February 1st before him, that he thought the five-story hotel building was the one mentioned in the contract and which stipulated for a cost of $340,000, but the contract itself shows that the six-story building was the one mentioned therein. The effect of his testimony, although flatly contradicted by the written contract itself, was to impress the jury with the fact that the estimate of $340,000 did not apply to the six-story building. We think it is clear from a reading of Brennan's testimony that he was testifying under a mistaken impression, and since by his deposition he contradicted the writing, the court should have excluded the portions thereof objected to by appellants.

After a careful review of the record in the light of the several motions and the written arguments filed by the parties, we adhere to our original disposition of the case and affirm the original opinion, as modified and explained hereinabove.

Both motions overruled.