## KNICKERBOCKER CLUB, Inc., v. PEARSON TILE & MANTEL CO.

### No. 3189.

Court of Civil Appeals of Texas. El Paso.
April 25, 1935.

Rehearing Denied May 16, 1935.

E. B. Elfers, of El Paso, for appellant.

Harold L. Sims, of El Paso, for appellee.

WALTHALL, Justice.

J. E. Pearson and R. M. Muirhead, copartners and doing business as Pearson Tile & Mantel Company, plaintiffs, brought this suit against the Knickerbocker Club, Inc., to recover damages on an alleged breach of contract, entered into on March 17, 1934, to lay certain tile and safety treads upon a stairway, the consideration therefor to be paid when said work should be completed.

The tile and tread to be used in the work to be done were to be specially manufactured according to the pattern and dimensions selected by defendant; the tile and treads to be used were ordered by plaintiffs, who were to pay for the material, and plaintiffs had paid, and were obligated to pay, for same; plaintiffs itemized the materials, stating the value of each item, the place from which each item manufactured came; plaintiffs had commenced the work to be done, incurred some expense, stating same, at which time, it is alleged, defendant, without cause, refused to permit plaintiffs to complete the work and comply with the contract, though plaintiffs were ready, able, and willing to do so.

Defendant answered by general demurrer, general denial, and special denial to the effect that its premises were used as an amusement resort; that such premises were visited daily by a large number of persons, and defendant would have suffered financial loss if its premises were closed during such repairs; that in making the contract plaintiff Pearson agreed to do the work when such work would not interfere with defendant's business, and without unnecessary delay; that the premises used by defendant consists of a basement, and that the entrance thereto was by means of a circular stairway consisting of a number of steps; that shortly after such contract was made plaintiff Pearson cut, chipped, and roughened said steps, and then failed to proceed with the work of laying said tile and completing the work on said steps, but left same in such unfinished and dangerous condition for several weeks, during which time several persons were caused to fall and sustain minor injuries; that defendant made repeated demands on plaintiff that he proceed with and complete said work and put the stairway in a safe condition, but that plaintiff failed and refused to complete the stairway, and that, to prevent loss of patronage and damage, defendant employed another contractor to put said stairway in a safe condition for use.

Plaintiffs in a supplemental petition answered by general denial; that the parties in making the contract contemplated that the materials to be used were to be ordered and manufactured at distant points, and that same would consume several weeks; that it would be necessary to chip and roughen the steps to the stairway; that defendant required that the work be done after rush hours and at such hours at night as defendant would permit the work to be done; that no time was specified in the contract for the completion of the work; that plaintiff began said work within a reasonable time under the circumstances; denied any unreasonable delay; that defendant wrongfully terminated said contract and refused to permit plaintiff to complete the work.

The case was submitted to the court without a jury. The court filed findings of fact, which we abbreviate, and state:

Plaintiff Pearson and defendant on the 17th day of March, 1934, entered into an agreement for the installation of a tiled stairway; it was understood at the time that it was necessary to order the specially made tile and other material from out of town; shortly thereafter defendant began to press plaintiff for performance of the contract, and on the 11th day of April, 1934, Pearson began roughing work on the stairway; such roughing work was necessary; it was the agreement that the work should be done in the morning hours between approximately 1 and 7 o'clock a. m.; the roughened condition of the stairway after work was begun conditioned a hazardous situation for the patrons of the club; on the 17th day of April, 1934, defendant procured a contractor to lay a cement stairway who did so in seven days; no notice was given Pearson of the cement contract; prior to the time the cement stairway was begun, Pearson had roughed the stairway for the installation of the tile and had laid a portion of the tile on three of the steps; at the time the cement contractor entered upon the construction of the cement stairway, Pearson was then "in position to have, and could have, and would have completed the job of installing said tiling within one week from said date;" it was impossible for Pearson to complete said contract job until the material ordered about the 17th day of March, 1934, should arrive; Pearson could not, and did not, do any further work upon the stair-

way after the cement contractor began the cement work.

The court then states the time of the arrival in El Paso of the different material, its cost value and the freight charges and the return of some of the material to the manufacturer, the value of the labor done by plaintiff; states the contract price to be $350, and the profit to Pearson at $50 for completing the contract, and concluded that plaintiff should have judgment against defendant for the sum of $210, and so entered judgment.

The court overruled defendant's motion for a new trial, and defendant prosecutes this appeal.

 Defendant submits that the evidence does not show a loss to plaintiff of $135.-85, in what plaintiff paid for the tile, the sum of $40 for the safety treads, and $35 profit that plaintiff would have made on the contract, had plaintiff been permitted to use the material and otherwise comply with the contract.

Plaintiff alleged, and the record shows, that the materials to be used were to be specially manufactured according to the pattern and dimensions selected by defendant, and which were so ordered and manufactured, and which plaintiff had paid and were liable to pay for same, and that, because of the special design and dimensions of said materials, there was no market for the materials, and that plaintiff was unable to dispose of same and that said materials were of no value to plaintiff.

Without quoting the evidence here, it is sufficient, we think, to show that, because of the special design and dimensions of the materials, there was no market for same, that plaintiff was unable to dispose of it, and that it was of no value to plaintiff. Some of the witnesses said: "I would not give a nickel for the whole lot of them," and that the materials would be worthless unless one had an identical job on which the materials could be used.

The court made no special finding as to the efforts of plaintiff to minimize the loss or the value of the materials, but entered judgment for plaintiff as stated.

 The evidence clearly shows that plaintiff and defendant contracted in reference to the character and dimensions of the materials to be used on that particular job, and that, unless they could be so used, they would be of no value. We have

concluded that defendant in making the contract had notice of the special damage that would necessarily flow from a breach of the contract. 13 Tex. Jur. pp. 90, 91; pars. 21 and 22, and cases noted thereunder. Also Capitol Hotel Co. v. Rittenberry (Tex. Civ. App.) 41 S.W.(2d) 697, 704, where the rule for the measure of damages generally for the breach of contract is stated.

We have found no reversible error, and the case is affirmed.

Affirmed.

PELPHREY, C. J., was disqualified and did not sit in this case.